United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 22, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-70030
_____

ROGELIO REYES CANNADY,

Petitioner-Appellant,

versus

DOUG DRETKE, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

_____

On Appeal from the United States District Court
for the Southern District of Texas
Corpus Christi Division
No. 2:01-CV-00273

_____

Before JONES, Chief Judge, and BARKSDALE and PRADO, Circuit Judges.

PER CURIAM:[*]

Rogelio Reyes Cannady was convicted and sentenced to death for murdering Leovigildo Bombale Bonal while Cannady was in prison serving two life sentences for prior murders he committed. After he exhausted state remedies, Cannady filed a federal petition for a writ of habeas corpus. The district court denied relief and refused to grant a certificate of appealability ("COA").

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Cannady now seeks a COA from this court on four issues: ineffective assistance of trial counsel; whether his claim of ineffective assistance of counsel concerning his defense of actual innocence was procedurally defaulted; the district court's denial of an evidentiary hearing; and Cannady's ex post facto challenge to Texas Penal Code § 19.03(a)(6). We deny the request for a COA on all issues.

## I.  BACKGROUND

On October 10, 1993, while serving two consecutive life sentences for murders he committed in 1990, Cannady beat his cellmate, Bonal, to death with a padlock attached to the end of his belt. The prison guards found Bonal lying on the cell floor with his hands tied behind his back with a belt. Cannady had no apparent wounds or injuries, but his boots and clothing were covered with blood. He neither complained of injuries nor looked as if he had been assaulted in any way.

Blood was splattered and smeared on the cell walls, the bedding of both bunks, and the furniture. Concealed in a pair of boots, the officers found a belt and the face of a combination lock. The body of the lock had been dumped in the cell's commode.

Patricia Graham of the Texas Department of Public Safety Crime Lab analyzed the blood splatters and testified that their velocity indicated that the victim had been beaten. Patterns were

2

created on the ceiling by blood flying off a weapon, possibly a combination lock. Graham also discerned that someone stomped in a puddle of blood or stomped on the victim lying in the blood or that the victim's head bounced up and down in the blood. Additionally, Graham had collected samples of blood from the cell, the belt, and Cannady's and Bonal's clothing. All blood samples were Type B and belonged to the same person. Bonal had Type B blood; Cannady has Type O blood.

Bonal's autopsy revealed numerous lacerations and abrasions on the scalp and face as well as lacerations, abrasions, and swelling on the arms, hands, and one leg. A circular imprint that matched the combination lock was found on his torso. He suffered two skull fractures and extensive hemorrhaging over the scalp and in the brain. One of the skull fractures was slightly circular in nature. The medical examiner matched the injuries to the lock retrieved from the cell. He also testified that it would take a fair amount of force to cause the fatal fractures and injuries Bonal sustained and that Bonal's injuries were consistent with homicide from the impact of a lock and from being stomped on by a person wearing boots.

Notwithstanding the gruesome evidence, Cannady testified that he killed Bonal in self-defense for fear of being raped. He asserted, among other things, that shortly after Bonal became his

3

cellmate, Bonal sat down near him and started rubbing Cannady's leg. Bonal also made several sexually suggestive comments to him, that, to Cannady, were especially ominous in a prison setting.

On the night of the killing, Cannady testified that he woke up when he thought he heard someone call "chow time." He allegedly got up to look out of the cell, but when he turned around he saw Bonal touching himself sexually. At that point, he confronted Bonal and hit him in the face. It seemed to Cannady that Bonal was trying to reach for something so Cannady grabbed his lock and attached it to his belt. Cannady then hit Bonal, believing Bonal was reaching for a weapon, and kept hitting Bonal because Bonal kept coming toward him. Cannady admitted that he hit and kicked Bonal repeatedly and used a weapon fashioned from a lock and a belt. He also admitted dismantling the weapon and tying Bonal's hands after Bonal became unconscious, both of which measures were allegedly done to prevent Bonal from striking back.

Cannady's counsel stipulated in open court in the guilt/innocence phase that Cannady had committed two murders in 1990 for which he was serving two consecutive life sentences at the time of Bonal's killing. The life sentences formed the legal predicate for a capital murder verdict.[2] The Texas Court of

_____

[2] On June 2, 1994, Cannady was indicted for capital murder. At a pretrial hearing on January 27, 1995, the trial court quashed the capital allegations in the indictment on the grounds that the prior offenses occurred

4

Criminal Appeals affirmed Cannady's conviction and sentence, Cannady v. State, 11 S.W.3d 205 (Tex. Crim. App. 2000), and dismissed his application for a writ of habeas corpus, Ex Parte Cannady, No. 25,462-02 (Tex. Crim. App. May 23, 2001). Another state habeas application was dismissed as an abuse of the writ. Ex Parte Cannady, No. 25,462-03 (Tex. Crim. App. Oct. 22, 2003).

Cannady filed a state federal habeas corpus petition, summary judgment was granted for the State and the court refused to grant a COA on any of the issues he raised. Cannady now seeks a COA from this court in order to appeal the adverse judgment.

## II. DISCUSSION

To obtain a COA under AEDPA, which governs this case, Cannady must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003).

Thus, he "must demonstrate that reasonable jurists could find the district court's resolution of his constitutional claims debatable or that reasonable jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further." Martinez v. Dretke, 404 F.3d 878, 884 (5th Cir. 2005)

---

before the effective date of the law that made the offense a capital crime. The State appealed and on January 4, 1996, the Court of Appeals for the Thirteenth Judicial District of Texas reversed the trial court's ruling and reinstated the capital allegations. State v. Cannady, 913 S.W.2d 741, 743-44 (Tex. App. 1996).

5

(citing <u>Miller-El</u>, 537 U.S. at 336, 123 S. Ct. at 1039). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Id.</u> Rather, it only "requires an overview of the claims in the habeas petition and a general assessment of their merits." <u>Id.</u> Nevertheless, "[b]ecause the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [the defendant's] favor." <u>Hernandez v. Johnson</u>, 213 F.3d 243, 248 (5th Cir. 2000).

Upon a grant of COA, however, AEDPA imposes a deferential standard of federal court review with respect to claims adjudicated on the merits in state court. To obtain habeas relief, a petitioner must demonstrate that the state courts' decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). In federal court review, a state court's factual findings are presumed to be correct, and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Against these background criteria, we address each of Cannady's issues.

6

## A.  Ineffective Assistance of Counsel

To establish a violation of the Sixth Amendment right to counsel, Cannady must show that his counsel's representation was deficient, and the deficiency prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Deficient legal representation is that which falls below an objective standard of reasonableness, measured against prevailing professional norms and viewed under the totality of the circumstances.  Id. at 687-88, 104 S. Ct. at 2064.  Judicial scrutiny of counsel's performance must be highly deferential, and we must "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  Id. at 689, 104 S. Ct. at 2065.  Cannady's ineffectiveness claim here rests on five contentions.

### 1.  Failure to advise

Cannady first contends that his trial counsel failed to advise him to accept the State's offer of a plea bargain that would have spared him the death penalty in exchange for a sentence of sixty years.  This contention contradicts the state habeas court findings, which were made following a three day hearing.  The district court, applying AEDPA's presumption of correctness, relied on the state habeas court findings that:  (1) Cannady had received and rejected an offer to plead guilty to capital murder in exchange

7

for an agreement by the State not to seek the death penalty; (2) Cannady's counsel did inform him of an offer of sixty years in exchange for a plea to noncapital murder, which offer Cannady declined because the indictment for capital murder had been quashed by the trial court and his counsel thought that the ruling would be upheld by the appellate court; (3) Cannady was unwilling to plead guilty to murder if the plea required a lengthy sentence; and (4) after the Texas Supreme Court reinstated the capital indictment, the State offered no further plea agreements. The district court reasoned that, because the best offer made by the State carried a term of sixty years, and Cannady was unwilling to accept any plea with a lengthy sentence, he could not demonstrate that his counsel's alleged failure to communicate the offer caused him any prejudice.

Cannady's principal burden before the district court was to rebut the State's findings by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and the district court determined that he failed to provide such evidence. At best, he selectively rehashed the state habeas testimony without impugning the finding that his attorney made him aware of the plea offer and he declined it. Alternatively, the district court determined that the state court reasonably concluded that even if Cannady's counsel did not inform him of the plea offer, the deficiency did not prejudice his defense

8

because he was unwilling to accept a lengthy sentence. In light of the presumption of correctness the district court was required to accord the state court's findings in reviewing the habeas petition, Cannady has failed to make the required showing. Reasonable jurists could not debate the district court's resolution of this claim.

### 2. Failure to stipulate

Cannady next argues that he was deprived of effective legal assistance because his trial counsel failed to stipulate to Cannady's two prior murder convictions outside the jury's presence. Cannady argued to the district court and in his brief to this court that the inaction by his counsel prejudiced his defense because a stipulation would have avoided having two officers testify in the penalty phase. The district court found no prejudice resulted from counsel's failure to stipulate, because the officers' testimony regarding Cannady's prior crimes was clearly relevant to the penalty phase issue of Cannady's future dangerousness, and therefore would not have been precluded by an earlier stipulation to the murders. Reasonable jurists could not debate the district court's resolution of this claim.

### 3. Failure to object to officer's testimony

Cannady next contends that he was deprived of effective legal assistance because his trial counsel failed to object to

"hearsay" testimony by two police officers in the penalty phase. In determining Strickland prejudice in the penalty phase, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 465 U.S. at 695. The district court noted that, by the time of sentencing, the jury knew that Cannady previously had been convicted of two murders, and was serving life sentences for those murders when he stomped and bludgeoned his cellmate to death. Consequently, the court determined that even if counsel had successfully objected to the officer's testimony, there was little probability that the jury would not have concluded that Cannady posed a future danger or that the mitigating evidence outweighed the evidence of future dangerousness. The district court's resolution of this claim is not debatable.

### 4. Failure to object to jury charge

Cannady urges that a COA is warranted because his trial counsel failed to object to two errors in the punishment charge. The trial court instructed the jury that if it sentenced Cannady to life imprisonment, he would have to serve at least thirty-five years before becoming eligible for parole. However, the law at the time of trial rendered him ineligible for parole until he served forty years. The district court determined that, although

10

Cannady's counsel should have objected to the erroneous charge, no prejudice was caused by the error:

> There is simply no reasonable probability that the jury would have found a triple murderer, who they were sentencing for a murder he committed while already serving two life sentences for two prior murders, any less dangerous if they knew that he would have to serve 40, rather than 35, years before becoming eligible for parole. The very fact that he murdered Bonal while serving two life sentences demonstrated that Cannady posed a danger if sentenced to life imprisonment.

Cannady v. Dretke, No. C-01-273, slip op. at 25 (S.D. Tex. Apr. 29, 2005).

Cannady also asserts that counsel should have objected to the punishment charge because it did not specify that the findings on both special issues were to be beyond a reasonable doubt. In the district court, Cannady argued that Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), required the State to prove beyond a reasonable doubt that there was nothing sufficiently mitigating about Cannady to justify a life sentence. The district court noted that neither Ring nor Apprendi had been decided at the time of Cannady's trial in 1997. The court then held that Cannady's counsel "did not render deficient performance by failing to anticipate the Supreme Court's decisions in cases decided approximately three and five years after Cannady's trial." Cannady, No. C-01-273, slip op. at 26. Even if Cannady's

11

substantive claims have merit,[1] the district court's holding is not debatable. Neither Ring nor Apprendi existed at the time Cannady's conviction became final, neither case applies retroactively,[2] and his counsel could not have been ineffective for failing to object to issues based on Supreme Court cases that were yet to be decided. Therefore, we need not grant a COA on this claim.

### 5. Failure to assess counsel errors cumulatively

Cannady seeks to magnify his individual ineffectiveness claims with a plea of cumulative error. The district court recognized that "cumulative error may provide a basis for habeas relief if the cumulative effect of the errors was to deny the defendant due process." Cannady, No. C-01-273, slip op. at 26 (citation omitted). Such errors must "amount to 'the failure to observe that fundamental fairness essential to the very concept of justice,'" and "'must be of such quality as necessarily prevent a fair trial.'" Id. (quoting Lisenba v. California, 314 U.S. 219, 236, 62 S. Ct. 280, 290 (1941)). In light of the fact that each of Cannady's ineffectiveness claims failed to satisfy at least one of

---

[1] It is unlikely that a Ring challenge can be made to Texas's procedure of entrusting the jury alone with a capital punishment decision. Further, Apprendi has yet to be applied to prior convictions.

[2] See Schriro v. Summerlin, 542 U.S. 348, 358, 124 S. Ct. 2519, 2526 (2004) ("Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review."); United States v. Brown, 305 F.3d 304, 310 (5th Cir. 2002) (holding that the procedural rule announced in Apprendi is not retroactively applicable to AEDPA petitioners).

12

the elements of <u>Strickland</u>, and considering the overwhelming evidence that Cannady beat Bonal to death while serving life sentences for two other murders, the district court reasonably concluded that the alleged errors did not prevent a fair trial. As reasonable jurists could not debate the district court's resolution of this contention, we will not issue a COA.

## B.   Procedural Default

Cannady challenges the district court's finding that he did not present to the state courts his claim of ineffective assistance of counsel for failing to assert his actual innocence. In consequence of his procedural default, the district court could not review the claim unless refusal to do so would have resulted in a miscarriage of justice. A miscarriage of justice, according to the Supreme Court, is actual innocence, meaning "the prisoner must show a fair probability that, in light of all the evidence . . . the trier of the facts would have entertained a reasonable doubt of his guilt." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 n.17, 106 S. Ct. 2616, 2627 n.17 (1986).

Cannady's claim of actual innocence of capital murder was based on self-defense. As the district court noted, under Texas law a person may use self-defense if "he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force," but that the use

13

of force is not justified "if the actor provoked the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). The court determined that Cannady was not legally justified in using force, and therefore could not establish that actual innocence, because (1) Cannady admitted at trial that Bonal was sitting on his own bed when Cannady went over and struck him; (2) Cannady admitted that Bonal did not first attack him; (3) Bonal did not begin to use physical force until after Cannady attacked him; and (4) there was no reasonable basis for Cannady to believe that the use of force was immediately necessary to protect himself.

In light of the evidence in this case, reasonable jurors could not entertain a reasonable doubt of his guilt, and reasonable jurists could not debate the district court's conclusion that Cannady lacked legal justification in using force. In the absence of any possible miscarriage of justice, Cannady's underlying claim of counsel error is procedurally defaulted. A COA is not appropriate.

## C. Evidentiary Hearing

Cannady next asserts that he is entitled to a COA to contest the district court's denial of an evidentiary hearing. The court, however, held that none was required because Cannady did not demonstrate any factual dispute whose favorable outcome would have entitled him to relief, and each of his claims could be resolved by

14

reference to the state court record. In this part of his COA application, Cannady argues in a wholly conclusional fashion that he has shown many issues of disputed fact entitling him to relief.

Neither in the district court nor in this court did Cannady even attempt to satisfy the statutory requirements that would justify an evidentiary hearing. See § 2254(e)(2). He asserted no retroactive rule of constitutional law "that was previously unavailable", see § 2254(e)(2)(A)(i). Not one of Cannady's claims relied on a "factual predicate that could not have been previously discovered through the exercise of due diligence." See § 2254(e)(2)(A)(ii). Finally, none of the facts underlying any of Cannady's claims would convince a reasonable jury that Cannady is actually innocent of capital murder. See § 2254(e)(2)(B). AEDPA prescribes a presumption of correctness for state factual findings, which can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The district court presumed the correctness of the state court findings after determining that Cannady could not rebut the presumption with clear and convincing evidence. Therefore, because reasonable jurists could not find the district court's resolution of the need for an evidentiary hearing debatable, or that the district court abused its discretion in denying a hearing, we will not grant a COA.

D.   Ex Post Facto

15

Cannady argues that he is entitled to a COA on whether the district court erred in denying relief on his ex post facto challenge to TEXAS PENAL CODE § 19.03(a)(6). Section 19.03(a)(6) makes it a capital crime when murder is committed by an inmate serving a sentence of ninety-nine years or life imprisonment.[3] Cannady contends that because an element of the capital murder charge — his life sentences — occurred before the effective date of the statute, the State is barred by the Ex Post Facto clause, U.S. CONST. ART. I, § 9, cl. 3 AND ART. I § 10, cl. 1 , from applying this statute to him.

The Texas Court of Criminal Appeals rejected this argument, noting that the legislators' intent in passing the law was to deter inmates already serving long sentences from murdering other inmates. State v. Cannady, 913 S.W.2d 741, 743-44 (Tex. App. 1996). The court held that the defendant's status as an inmate serving a sentence of ninety-nine years or life, rather than the date of his prior convictions or the underlying offense, is an

---

[3]     TEXAS PENAL CODE § 19.03. Capital Murder

(a)     A person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and:
. . .
        (6)     the person:
. . .
                (B)     while serving a sentence of life imprisonment or a term of 99 years for an offense under Section 20.04, 22.021, or 29.03, murders another.

16

element of the § 19.03(a)(6) crime. Cannady fulfilled the necessary status on and after the effective date of § 19.03(a)(6).

The district court reviewed the state court decision and likened § 19.03(a)(6) to "recidivist, or 'three strikes,' statutes which enhance penalties for crimes committed after the effective date of the statute based on prior convictions." Cannady, No. C-01-273, slip op. at 33. In so doing, the court noted that "[b]oth the Supreme Court and the Fifth Circuit have held that such enhancements do not violate the Ex Post Facto clause," id., and should not be "viewed as either a new jeopardy or additional penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." Id. (quoting Gryger v. Burke, 334 U.S. 728, 732, 68 S. Ct. 1256, 1258 (1948). The district court's enhancement reasoning is perfectly apt.

In view of the Texas Court of Appeals decision and the state record, the district court held that § 19.03(a)(6) did "not retroactively punish Cannady's prior offenses; rather, it enhance[d] the possible penalty for his murder of Bonal because of his then-current status as a convicted murderer serving two life sentences," and therefore § 19.03(a)(6) did "not violate the constitutional prohibition against ex post facto lawmaking." Id. at 34. Reasonable jurists accordingly could not debate the district court's resolution of Cannady's ex post facto claim.

17

### III. CONCLUSION

For the reasons discussed above, we deny Cannady's application for a COA on all claims and as such lack jurisdiction to review the district court's denial of habeas relief on these claims. See Miller-El, 537 U.S. 335-36, 123 S.Ct. 1039.

COA DENIED.