# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 2, 2010

Charles R. Fulbruge III
Clerk

No. 07-70044

LARRY WAYNE WOOTEN

Petitioner - Appellant

v.

RICK THALER, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:02cv216

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Larry Wayne Wooten was convicted of capital murder in Texas and sentenced to death. After his conviction and sentence were affirmed on direct review, Wooten unsuccessfully sought state habeas relief. A federal district court also denied habeas relief in full, though it granted Wooten a certificate of appealability. He complains that late-arriving DNA evidence strengthened the state's case; that had he known of this evidence he would not have gone to trial. Now on appeal, we too find no constitutional infirmity and so AFFIRM the

district court's denial of Wooten's petition.

I

The relevant facts are essentially undisputed. In 1997, a Texas state indictment charged Wooten with capital murder. Central to the state's case was DNA analysis of blood evidence found at the murder scene and elsewhere that would be—if reliable—virtually conclusive of guilt. The trial court directed the prosecution to turn over all DNA analysis and evidence in its possession. The prosecution furnished a preliminary DNA report to defense counsel in May 1997 and a further accounting of DNA evidence in January 1998. Defense counsel obtained their own experts who, on the basis of the evidence proffered thus far, believed the prosecution's DNA evidence unreliable. It was at this point that the prosecution presented Wooten's attorney with a plea deal: if Wooten pled guilty, he would receive a life sentence; if not, he would remain eligible for the death penalty. With his experts telling him that the prosecution's DNA analysis was faulty, Wooten rejected the offer and his case proceeded toward trial.

Once jury selection was under way, however, additional data emerged from the DNA laboratory, which made it clear that the laboratory had unintentionally failed to turn over all available DNA evidence. This late-coming data also revealed the prosecution's DNA evidence to be significantly more reliable than initially apparent. Wooten's counsel moved for a continuance to permit their experts time to complete their evaluation. The trial court denied that motion, jury selection ended, and Wooten's trial began.

Defense counsel still assumed that they would be able to attack the veracity of the DNA evidence, albeit less convincingly. But, after opening statements were made and some witnesses were called, yet more evidence came in from the laboratory that suggested even that tempered strategy was probably

misguided. The district court granted a twelve-day continuance to permit a full analysis by the defense experts. That analysis indicated that any apparent evidentiary flaws were illusory or had been corrected. The jury found Wooten guilty and he was sentenced to death.

Wooten's case and subsequent habeas petition worked their way through the state court, and we now review the district court's denial of his federal habeas petition. The district court granted a certificate of appealability to answer two questions: (1) whether Wooten's right to the due process of law was violated by his being unintentionally misled, at the time of his plea negotiations and trial preparation, into believing that the DNA evidence against him was not as strong as it turned out to be; and (2) whether defense counsel's being misled rendered their assistance constitutionally ineffective.

## II

Wooten's federal habeas petition is subject to the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). When reviewing state proceedings, AEDPA proscribes federal habeas relief unless the state court's adjudication on the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[1] We review the district court's findings of fact for clear error and its conclusions of law de novo, "applying the same standards to the state court's

---

[1] 28 U.S.C. § 2254(d).

decision as did the district court."[2]  "A state court decision is 'contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases.'"[3]  "A state-court decision will also be contrary to . . . clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."[4]  "A state-court decision involves an unreasonable application of [Supreme Court] precedent if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."[5]  Finally, AEDPA requires us to presume state-court findings of fact to be correct "unless the petitioner rebuts that presumption by clear and convincing evidence."[6]

## III

Wooten first contends that the prosecution's delay in producing the full weight of its DNA evidence violated his due process rights.  No matter how Wooten chooses to characterize this claim, it ultimately "stems from the defendant's 'legitimate interest in the character of the procedure which leads to

---

[2] *Harrison v. Quarterman*, 496 F.3d 419, 423 (5th Cir. 2007).

[3] *Wallace v. Quarterman*, 516 F.3d 351, 354 (5th Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)) (addition in *Wallace*).

[4] *Taylor*, 529 U.S. at 406.

[5] *Id.* at 407.

[6] *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).

the imposition of sentence' of death."[7]  That interest embraces a right to fair notice if the defendant's case proceeds to trial— one that ensures "[a] defendant's right to notice of the charges against which he must defend,"[8] the right to "[n]otice of the issues to be resolved by the adversary process,"[9] and the right to be free from the use of "secret testimony in the penalty proceeding of a capital case which the defendant has had no opportunity to consider or rebut."[10]

The right to fair notice, however, falls short of imposing a constitutional duty on the state to disclose incriminating evidence, and of course does not require the prosecution to hand over its case on a silver platter.  Fair notice of the charges leveled and the issues to be resolved is one thing; any claim to notice of state *evidence* "stands on quite a different footing"[11] because "'[t]here is no general constitutional right to discovery in a criminal case, and *Brady*,' which addressed only exculpatory evidence, 'did not create one.'"[12]  Implicit in this

---

[7] *Gray v. Netherland*, 518 U.S. 152, 164 (1996) (quoting *Gardner v. Florida*, 430 U.S. 349, 358 (1977)).

[8] *Id.* at 168 (citing In re *Ruffalo*, 390 U.S. 544 (1968); *Cole v. Arkansas*, 333 U.S. 196 (1948)).

[9] *Lankford v. Idaho*, 500 U.S. 110, 126 (1991).

[10] *Gray*, 518 U.S. at 164 (citing *Gardner*, 530 U.S. at 362).

[11] *Id.  Compare id.* (refusing to find a due process violation where the defendant received only a day's notice of new testimony, but "had the opportunity to hear the testimony . . . in open court, and to cross-examine [the witnesses]") *with Gardner*, 430 U.S. at 362 (finding a due process violation "when the death sentence was imposed, at least in part, on the basis of information which [the defendant] had no opportunity to deny or explain").  "Gardner literally had no opportunity to even see the confidential information."  *Gray*, 518 U.S. at 168–69 (distinguishing *Gardner* from the facts in *Gray* on that basis).

[12]  *Id.* (quoting *Weatherford, v. Bursey*, 429 U.S. 545, 559 (1977)); *Wardius v. Oregon*, 412 U.S. 470, 474 (1973) ("[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded.").  *See also Weatherford*, 429 U.S. at 559 ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify

broad principle is the absence of any constitutionally-footed duty to disclose evidence made stronger by state investigative efforts that continue after the defendant's arrest, subsequent to any plea negotiation, or during trial. For example, in *Weatherford v. Bursey*, the Supreme Court considered the due process claim of a defendant who had been convicted with the aid of surprise testimony of an accomplice who was an undercover agent.[13] Though the prosecution had not intended to introduce the agent's testimony, it reversed course the day of trial and put the agent on the stand.[14] To maintain his cover, the agent had previously told the defendant and his counsel that he would not testify against the defendant.[15] The Court nonetheless declined to find a due process violation because any resulting "disadvantage" at trial, "was no more than exists in any case where the State presents very damaging evidence that was not anticipated."[16] As a result, the defendant "must have realized that in going to trial the State was confident of conviction and that if any exculpatory evidence or possible defenses existed it would be extremely wise to have them available. Prudence would have counseled at least as much."[17]

Recognizing the difficulty of any notice-of-evidence due process claim, Wooten relies largely on *Lankford v. Idaho*, a bench trial of a capital case where the prosecution did not argue for death but the judge who had said nothing

---

unfavorably.").

[13] 429 U.S. 545 (1977).

[14] *Id.* at 549.

[15] *Id.* at 560.

[16] *Id.* at 561.

[17] *Id.*

about a possible death sentence gave one anyway, with the observation that he thought the prosecutor too lenient.[18]  From *Lankford*, Wooten would extract a principle that "a defendant's critical decisions in a death penalty case are inconsistent with due process of law when based on misinformation furnished, or misimpressions fostered, by representatives of the government."  Foregoing any argument that "the State had a constitutional duty under any theory, *Brady* or otherwise, to disclose the DNA evidence in question," Wooten claims that, under *Lankford*, "the State's incomplete disclosure of the DNA evidence under the trial court's discovery order was tantamount to a false representation that no other relevant DNA evidence existed."  He says this "misrepresentation" led him to reject the plea offer and derailed his defense strategy, which focused on attacking the DNA's reliability.

*Lankford* found a due process violation because defense counsel was misled as to the issue (and ultimate sentence) to be argued;[19] in this case, Wooten was aware of all issues to be considered, but bases his claim on putative defects born in the prosecution's untimely disclosure of inculpatory *evidence*. That distinction means the world, as the Supreme Court's notice-of-evidence jurisprudence—including *Weatherford*—demonstrates. Nevertheless, Wooten's argument is not without some merit, for there is a line of authority that leaves open the possibility that a defendant who is *deliberately* misled as to the full weight and import of the state's evidence might have a cognizable due process claim.  In *Gray v. Netherland*, for example, the Supreme Court remanded a defendant's claim that prosecutors misled defense counsel about evidence they

---

[18] 500 U.S. at 115–18.

[19] *Id.* at 126.

intended to use at sentencing.[20]   While explaining that due process is not impinged when a prosecutor merely "change[s] his mind over the course of the trial" (as in *Weatherford*), the Court took seriously the notion that due process could be violated if a prosecutor knowingly and affirmatively acts to deceive the defendant by concealing inculpatory evidence.[21] But, *Gray* and others like it—assuming they endorse a constitutional right in the first place—would fault only "deliberate" misrepresentations[22] and Wooten concedes that any misrepresentation made by prosecutors in this case was unintentional.  As a result, even if *Gray*'s hint rises to the level of clearly established law sufficient to support a habeas petition on AEDPA review, it is of no help to Wooten.  So long as the evidentiary "misrepresentation" was unintended as in *Weatherford*, there is no due process violation.

Moreover, much unlike the unexpected testimony in *Gray* and *Weatherford*, the state's prerogative to analyze and reanalyze DNA evidence to ensure its reliability should have come as a surprise to no one. Defense counsel in this case were aware that the state had significant physical evidence, that the evidence contained blood specimens, and that if that blood evidence proved reliable, it would be virtually conclusive of the guilty party's identity.  When it is the *analysis* of physical evidence, and not the physical evidence itself that is at issue, requiring a hold on its development would ignore the fact—well-known to prosecution and defense counsel alike—that the physical evidence is still out there, capable of providing additional blood samples for DNA work-ups.  We do

---

[20] *Gray*, 518 U.S. at 165–66.

[21] *Id.* (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).

[22] *See, e.g.*, *id.*; *Weatherford*, 429 U.S. at 560 (distinguishing *Weatherford* from a case involving "deliberate misrepresentation").

not apply a snapshot test to evidence.[23]  When the actual physical evidence is in full view, there is no constitutional demand that the prosecution warrant any analyses of that evidence as final—as the best and last attempts.  As everyone knows, the continuing existence of physical evidence—and late-coming DNA analyses of that evidence—cuts both ways for those accused of crimes.

This is not to say that a finding of deliberateness would require direct evidence: Wooten makes no institutional arguments and puts forth no evidence of historical and persistent delays from which we could infer a deliberate aim to mislead defendants, or to so push their counsel off balance that any given defense attorney would be unable to tell when a prosecutor is presenting a plea deal based on a reasonably strong case, or a laughably weak one.  He also has not argued that the state mismanaged its relationship with the DNA laboratory to the extent that the communication gap took on the color of deliberate action.

Even if his due process right to a fair trial was not disturbed, Wooten contends he must be given a chance to accept the prosecution's plea offer anew because his initial rejection was based on misinformation.  Again, the Supreme Court's decision in *Weatherford* is instructive.  There, the defendant alleged that the prosecution had "lulled [him] into a false sense of security and denied him the opportunity . . . to consider whether plea bargaining might be the best course."[24]  Like Wooten, he claimed he would have taken the prosecution's offer of a plea had he only known the full extent of the state's inculpatory evidence.[25]

---

[23] *See Weatherford*, 429 U.S. at 561; *supra* notes 11–17.

[24] *See id.*, 429 U.S. at 559.

[25] *Id.* at 560–61.  For the sake of analysis, we take as given that Wooten would have accepted the plea had he known the DNA analyses would turn out to be virtually conclusive and reliable.  That fact is not certain, however.  The plea deal sought by the prosecution would have required Wooten, in exchange for taking the death penalty off the table, to admit to

The *Weatherford* Court nonetheless balked, reminding that because "there is no constitutional right to plea bargain . . . [i]t is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty."[26]

To hold otherwise in this case would be to ignore the stark fact that plea bargaining presents a choice captive to one particular moment in time; a defendant's decision to accept an offer risks the state's case getting worse. A rejection risks the case getting better. Wooten does not cite to any case that purports to allow a defendant to reclaim a rejected bargain once those risks—assessed by both sides at the time the bargain was made—are realized. To the point, this contention ignores the reality that the state's plea offer to take the death penalty off the table was made on the same earlier, presumably weaker case. Nothing suggests there would have been a plea offer had the prosecution known the strength of its hand.

IV

To the extent Wooten's complaint can be recast as an independent ineffective assistance of counsel claim, that claim is similarly without merit. To prevail on a *Strickland* claim, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.[27] Wooten's claim was adjudicated on the

another murder as well. He was unwilling at the time to admit to that crime.

[26] *Id.* at 561.

[27] *Smith v. Spisak*, ___ U.S. ____, 130 S. Ct. 676, 684–85 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

merits by the state court—and rejected—so the question here "'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable—a substantially higher threshold.' And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."[28] Our review is thus "doubly deferential."[29]

Given this highly circumscribed standard of review and our due process analysis, which applies with full force here as well, Wooten's *Strickland* argument fails to convince. Rendering effective counsel means doing a reasonably competent job with the evidence of the case as it stands. There is no loss of effectiveness under the Sixth Amendment as the strength of the state's case grows, just a lessening of the defendant's chance to prevail.

V

Because we conclude that the state court proceedings were not infected with error, we AFFIRM the district court's denial of Wooten's habeas petition.

---

[28] *Knowles v. Mirzayance*, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009).

[29] *Id.*