# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2010

No. 09-70023

Lyle W. Cayce
Clerk

LEE ANDREW TAYLOR,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:04-CV-150

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Texas death row inmate Lee Andrew Taylor appeals the district court's denial of habeas relief. For the following reasons, we affirm.

## I. BACKGROUND

In 1995, at the age of 16, Taylor robbed an elderly couple in their home in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-70023

Houston, Texas. He was subsequently convicted of aggravated robbery[1] and sentenced to a term of life imprisonment. While he was serving that sentence, Taylor came into possession of a "shank"—a prison-made stabbing implement—which he used against Donta Green during the morning of March 31, 1999. Taylor stabbed Green 13 times and inflicted numerous other scratch wounds; Green later died as a result.

Taylor was indicted for capital murder for intentionally or knowingly causing the death of an individual while serving a sentence of life imprisonment for aggravated robbery. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(6)(B).[2] Following a jury trial, Taylor was convicted and sentenced to death. On December 11, 2002, hearing the case on direct appeal, the Texas Court of Criminal Appeals (TCCA) affirmed. Taylor next sought post-conviction relief in the state trial court, which denied relief. On March 31, 2004, the TCCA, adopting the trial court's findings of fact and conclusions of law, similarly denied relief.

Taylor next sought a writ of habeas corpus in federal district court. In his application under 28 U.S.C. § 2254, Taylor raised 14 issues that he claimed warranted relief. The district court dismissed all of Taylor's claims, *see Taylor v. Thaler*, No. 4:04-CV-150, 2009 WL 2833453 (E.D. Tex. Aug. 31, 2009), but issued a certificate of appealability (COA) with respect to three of them. Those three claims raise essentially two issues: (1) whether using Taylor's aggravated

---

[1] Under Texas law, aggravated robbery includes, *inter alia*, the commission of robbery if the defendant "causes bodily injury to . . . or threatens or places . . . in fear of imminent bodily injury or death, . . . [a person] 65 years of age or older." TEX. PENAL CODE ANN. § 29.03(a)(3)(A).

[2] Section 19.02(b)(1) provides that a person commits murder by "intentionally or knowingly caus[ing] the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1). Section 19.03(a)(6)(B) provides that a person commits capital murder by "commit[ting] murder as defined under Section 19.02(b)(1) . . . while serving a sentence of life imprisonment . . . for an offense under Section . . . 29.03." TEX. PENAL CODE ANN. § 19.03(a)(6)(B).

No. 09-70023

robbery conviction—for an offense he committed as a minor—as the predicate for his capital murder conviction constitutes cruel and unusual punishment; and (2) whether admitting Taylor's prison disciplinary record during the sentencing phase of his capital murder trial violated his right to confront the witnesses against him.[3]   Taylor now appeals the denial of habeas relief on those three claims.

## II.  LEGAL STANDARDS

In an appeal from a district court's denial of habeas relief, we apply the same standards as the district court.  *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010).  Taylor's habeas proceeding is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See Pierce v. Thaler*, 604 F.3d 197, 200 (5th Cir. 2010).  Under AEDPA, we may not grant habeas relief:

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3] The three claims for which a COA was granted are articulated as follows:

1. Because he is actually innocent of the death penalty, his execution would constitute a miscarriage of justice and is therefore barred by the Eighth Amendment.

10. He was denied the right to confront witnesses by the trial court's admission of prison administrative records which contained testimonial hearsay.

11. Because Taylor was sixteen years old at the time he committed aggravated robbery, his death sentence, which was based in part on his conviction for that robbery, constitutes cruel and unusual punishment.

The district court concluded that Taylor's eleventh claim was "indistinguishable from Taylor's first claim" and denied it for the same reasons that it denied his first claim.

No. 09-70023

28 U.S.C. § 2254(d).

> A state court decision is "contrary to" federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it involves a set of facts that are materially indistinguishable from a Supreme Court decision but reaches a result different from that Court's precedent.

*Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010) (citing *Woodward v. Epps*, 580 F.3d 318, 325 (5th Cir. 2009)). "The relevant 'clearly established federal law' is the law that existed at the time the state court's denial of habeas relief became final." *Pierce*, 604 F.3d at 200 (citing *Abdul–Kabir v. Quarterman*, 550 U.S. 233, 238 (2007); *Williams v. Taylor*, 529 U.S. 362, 390–94 (2000)).

## III.  DISCUSSION

As mentioned above, the district court granted Taylor a COA for each of three claims that he presented in his federal habeas petition.  Two of those issues involve the Eighth Amendment's prohibition on cruel and unusual punishment,[4] while the third involves the Sixth Amendment's Confrontation Clause.[5]  We first address the Eighth Amendment issues before turning to the Sixth Amendment issue.

## A.    Cruel and Unusual Punishment

Taylor's Eighth Amendment arguments consist of two discrete theories.  First, he claims that the Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551 (2005), forecloses the use of his prior aggravated robbery conviction as the predicate elevating his homicide offense from non-capital to capital murder because he was a minor when he committed the aggravated robbery offense.  Second, he claims that Texas's capital scheme impermissibly expands the class

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.

[5] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. CONST. amend. VI.

of persons eligible for the death penalty to include persons who commit murder while serving a sentence of life imprisonment for aggravated robbery. The State urges that both claims were procedurally defaulted and are, in any event, meritless. We pretermit discussing the procedural defaults, as Taylor's "claim[s] can be resolved more easily" on the merits. *See Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004).

### 1.    Youthfulness

In *Roper*, the Supreme Court held that "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." 543 U.S. at 578. Taylor urges that we should interpret *Roper* to reach the conclusion that his own "diminished moral culpability at 16 years of age, the time at which he committed aggravated robbery, should preclude use of that conviction and sentence as an aggravating factor thereby making him eligible for the death penalty."[6]

We conclude that Taylor's claim must fail because *Roper* does not clearly establish that he is ineligible for the death penalty. The *Roper* Court held only that "[t]he age of 18 is . . . the age at which the line for death eligibility ought to rest." 543 U.S. at 574. In reaching this conclusion, the Court identified three ways in which juvenile offenders differed from adult offenders: (1) lack of maturity and underdeveloped senses of responsibility; (2) vulnerability to negative influences and outside pressure; and (3) less developed characters. *Id.* at 569–70. According to the Court, "[t]hese differences render suspect any conclusion that a juvenile falls among the worst offenders." *Id.* at 570. After

---

[6] We note that the TCCA entered a final denial of Taylor's state habeas petition on March 31, 2004, and that *Roper* was decided nearly a year later, on March 1, 2005. This raises the question whether *Roper* was "clearly established Federal law, as determined by the Supreme Court of the United States," at the time of the relevant state court decision, such that *Roper* can provide Taylor with a foundation for relief under AEDPA. Neither party raised this issue on appeal. In any event, as Taylor's claim fails on its merits, we need not decide that question today.

recognizing "the diminished culpability of juveniles," *id.* at 571, the Court then analyzed whether the two recognized social purposes—retribution and deterrence—were furthered by allowing the death penalty for offenders under 18 years of age, *id.* at 571–72. The Court noted that "[r]etribution is not proportional if the law's most severe penalty is imposed on one whose culpability or blameworthiness is diminished, to a substantial degree, by reason of youth and immaturity." *Id.* at 571. It further determined that "the same characteristics that render juveniles less capable than adults suggest as well that juveniles will be less susceptible to deterrence." *Id.* The Court concluded that "[w]hen a juvenile offender commits a heinous crime, the State can exact forfeiture of some of the most basic liberties, but the State cannot extinguish his life and his potential to attain a mature understanding of his own humanity." *Id.* at 573–74.

While the *Roper* decision clearly establishes that the death penalty may not be imposed as punishment for an offense committed as a juvenile, it does not clearly establish that such an offense may not be used to elevate murder to capital murder. Here, Taylor is not being punished again for his earlier crime but is instead being punished for a murder that he committed as an adult. *See Cannady v. Dretke*, 173 F. App'x 321, 329–30 (5th Cir. 2006) (per curiam) (likening § 19.03(a)(6) to a constitutionally acceptable recidivist statute). Thus, the TCCA did not unreasonably apply federal law in concluding that Taylor's aggravated robbery conviction and corresponding life sentence rendered him eligible for the death penalty under § 19.03(a)(6)(B).

### 2. Overbreadth

Taylor also argues that Texas's capital-sentencing scheme fails to genuinely narrow the class of persons eligible for the death penalty. He contends that it is unconstitutional for Texas to authorize the death penalty in cases where a murder is committed by an inmate serving a life sentence for

aggravated robbery but not where the same murder is committed by an inmate serving a life sentence for various other crimes. Taylor's argument is, essentially, that because there are other serious crimes that cannot serve as predicates for § 29.03(a)(3), the crime of aggravated robbery may not be so used.

"[T]he Constitution 'does not mandate adoption of any one penological theory.'" *Ewing v. California*, 538 U.S. 11, 25 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 999 (1991) (Kennedy, J., concurring)). Instead, the Supreme Court has emphasized its longstanding "tradition of deferring to state legislatures in making and implementing such important policy decisions." *Id.* at 24 (citing cases). This deference requires that the state have "a reasonable basis for believing" that an enhanced sentence "'advances the goals of its criminal justice system in any substantial way.'" *Id.* at 28 (alterations omitted) (quoting *Solem v. Helm*, 463 U.S. 277, 297 n.22 (1983)). Where the death penalty is involved, the Supreme Court has articulated the following rule: "If a State has determined that death should be an available penalty for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." *Spaziano v. Florida*, 468 U.S. 447, 460 (1984) (citing *Zant v. Stephens*, 462 U.S. 862, 873–80 (1983); *Furman v. Georgia*, 408 U.S. 238, 294 (1972) (Brennan, J., concurring)); *accord Kansas v. Marsh*, 548 U.S. 163, 173–74 (2006) ("[A] state capital sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination . . . . So long as a state system satisfies these requirements, our precedents establish that a State enjoys a range of discretion in imposing the death penalty . . . ." (internal citation omitted)).

Consistent with these principles, we addressed the constitutionality of Texas's capital-sentencing scheme in *Sonnier v. Quarterman*, 476 F.3d 349 (5th

Cir. 2007). We first noted that the distinction between the nine enumerated categories of capital murder, *see* TEX. PENAL CODE ANN. § 19.03(a), and other categories of murder, *see* TEX. PENAL CODE ANN. § 19.02(b), "is the initial narrowing of the class of persons who may potentially face the death penalty." *Sonnier*, 476 F.3d at 366. This, in conjunction with the requirement that one or more statutory aggravating circumstances be found beyond a reasonable doubt by a unanimous jury, led us to "conclude that the Texas scheme . . . is constitutionally valid . . . , in that it rationally narrows the classes of defendants determined to be eligible and selected for the death penalty." *Id.* at 366.

We conclude that our decision in *Sonnier*, by which we are bound, *see United States v. Rose*, 587 F.3d 695, 705 (5th Cir. 2009) (per curiam), forecloses Taylor's argument. Moreover, it was not irrational for the State to authorize the death penalty only for those inmates whose life sentences were imposed for aggravated offenses. As the TCCA has explained, "inmates who have committed murder or other aggravated offenses have already shown a certain propensity for violence. Furthermore, the greater the sentence that the inmate received, the less he may have to lose by committing further offenses in prison." *Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App. 2000) (footnote omitted); *see also Cannady v. Dretke*, 173 F. App'x at 329 ("[T]he legislators' intent in passing the law was to deter inmates already serving long sentences from murdering other inmates." (citing *State v. Cannady*, 913 S.W.2d 741, 743–44 (Tex. App.—Corpus Christi 1996, writ denied))). Nor is it constitutionally problematic that the earlier decision to charge an aggravated offense such as aggravated robbery rather than ordinary robbery rested within the discretion of the prosecutor. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was not deliberately based upon

No. 09-70023

an unjustifiable standard such as race, religion, or other arbitrary classification.'" (alteration omitted) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962))). We therefore hold that the state court's decision was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

## B.    Confrontation Clause

Taylor next alleges that admission of portions of his prison disciplinary record during the sentencing phase of his trial violated his right to be confronted with the witnesses against him.  During the sentencing phase of his trial, the State sought to introduce a copy of Taylor's prison disciplinary record, which contained reports of altercations with other inmates and threats made to prison guards.  Taylor objected on the grounds that the reports contained inadmissible hearsay and violated his rights under the Confrontation Clause.  The state trial court admitted the prison disciplinary record under the business records exception to the hearsay rule.  *See* TEX. R. EVID. 803(6).  On direct appeal to the TCCA, Taylor claimed that the record was erroneously admitted under the business records exception because it contained "matters observed by police officers and other law enforcement personnel."  TEX. R. EVID. 803(8)(B); *see also Cole v. State*, 839 S.W.2d 798, 810 (Tex. Crim. App. 1990) (holding that evidence made inadmissible by Rule 803(8) may not be admitted under Rule 803(6)).  However, because Taylor did not raise that objection at trial, the TCCA held that he "procedurally defaulted his *Cole* claim for appeal."  The TCCA further held that Taylor's Confrontation Clause claim, which was predicated on the *Cole* claim, was thus procedurally defaulted as well.[7]

In this appeal, Taylor has not attempted to argue that his procedural

---

[7] The TCCA held in the alternative that any error was harmless.

No. 09-70023

default on the Confrontation Clause claim is excused by cause and prejudice. Instead, he merely reurges his assertion that because he is actually innocent of the death penalty, any procedural default should be excused.[8] We have already rejected, on the merits, Taylor's contentions that he is ineligible for the death penalty. As a result, his claim of actual innocence based on those contentions must also fail. Because Taylor offers no independent justification for us to reach the merits of his Confrontation Clause claim, we do not do so.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[8] In the portion of his brief devoted to the issue, Taylor argues:

As already stated, Petitioner contends that any procedural default should be excused in light of his "actual innocence" of the death sentence imposed on him as a result of the unconstitutional application of Tex. Pen. Code § 19.03(a)(6)(B) in which an offense committed when Petitioner was a juvenile was used to elevate the killing of a fellow inmate from simple murder to capital murder.