**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 29, 2012

Lyle W. Cayce
Clerk

No. 10-60201

MARIE SALTS,

Petitioner-Appellee– Cross-Appellant.

v.

CHRISTOPHER B EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT
OF CORRECTIONS, et al.

Respondents-Appellants–Cross-Appellees.

-----------------------------------------
MICHAEL SALTS,

Petitioner-Appellee– Cross-Appellant.

v.

CHRISTOPHER EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT
OF CORRECTIONS, et al.

Respondents-Appellants–Cross-Appellees.

Appeals from the United States District Court
for the Northern District of Mississippi

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

Respondents Christopher Epps, Commissioner of the Mississippi
Department of Corrections, and Jim Hood, Mississippi Attorney General,
(collectively, "the State") appeal from the district court's grant of Michael and
Marie Saltses' petition for a writ of habeas corpus.  The Saltses petitioned for

No. 10-60201

habeas relief because, inter alia, the Mississippi Court of Appeals denied their Sixth Amendment claim for ineffective assistance of counsel. Because the Mississippi court's decision was contrary to clearly established law, we AFFIRM the district court's grant of habeas relief under 28 U.S.C. § 2254.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. The Saltses' conviction for embezzlement

Petitioners Michael and Marie Salts, proprietors of a family-run funeral-home in Boonville, Mississippi, were charged with and convicted of embezzlement in connection with their business. Part of the Saltses' business involved providing "funeral insurance," or burial insurance, to many of their customers. The Saltses provided this coverage for years through Gulf National Insurance ("Gulf").[1]

Many funeral-home clients would send their burial insurance premiums directly to the Saltses, who would in turn forward the payments to Gulf. In 1994, however, Gulf terminated relations with the Saltses and stopped providing insurance to their customers. Some of the Saltses' customers were apparently unaware of this fact, and they continued sending payments directly to the Saltses. The State alleged that, in a number of instances, the Saltses kept these payments rather than returning them to the clients. It was on this theory that the Saltses were charged with six counts each of embezzlement of customer funds.

The Saltses were indicted on May 12, 2003, but more than two years passed before their eventual trial, which began on October 3, 2005. This delay is attributable to a number of causes, including two judges recusing themselves from the case, renovations at the courthouse, and a series of continuances requested by the Saltses' counsel. In the time between their indictment and

---

[1] The following facts relating to the Saltses' embezzlement conviction appear in *Salts v. State*, 984 So.2d 1050, 1055 (Miss. App. 2008).

No. 10-60201

trial, the Saltses had three lawyers. The first, Steve Farese, represented them for only a few months before withdrawing due to "two separate irreconcilable conflicts." After Farese withdrew, the court set a trial date for March 3, 2004. From the time Farese withdrew until several days before trial, the Salts were represented by a second attorney, Michael Thorne.

During his time as the Saltses' attorney, Thorne requested and received a number of continuances. The first request cited the need to obtain discovery materials from Farese, the complexity of the case, and the potential need to retain an expert accountant. The second and third requests, filed in the following months, explained that "this attorney has not been able to properly prepare . . . due to other litigation involving these defendants." In the third request, the Saltses specifically waived their right to a speedy trial. In granting this third request, the trial court set the case for trial on June 27, 2005, though it noted that "[i]n the event the renovation of the Courthouse has not been completed by the date set for trial, the case will be continued to a later date."

On June 24, 2005, Thorne requested another continuance, in light of a need to "travel[] to Florida with his Wife to seek treatment for a serious medical condition." The motion noted that Thorne had "also been advised that the renovations to the Prentiss County Courthouse [we]re still under construction and the use of the Courthouse [wa]s not available." The trial judge granted the motion and set the case for trial on September 6, 2005.

Then, on August 5, 2005, the Saltses filed a motion to transfer venue, citing local media publicity surrounding the charges against them in Prentiss County. The trial court granted the motion on September 13, 2005, transferring venue to Lee County, Mississippi. The trial court set the case for trial in Lee County on October 3, 2005.

On the eve of trial, September 28, 2005, Thorne made one final request for continuance "due to illness" in his family. He indicated that he was not prepared

No. 10-60201

for trial in five days and needed "additional time in which to prepare for the trial of this matter to properly defend this case." The very next day, the record shows that the Saltses terminated Thorne as their attorney, citing "differ[e]nce of opinion on the way this case ought to be represented." At a pretrial hearing, the Saltses clarified that this "difference of opinion" related to Thorne's lack of preparation for trial. They informed the Court that Thorne had not subpoenaed witnesses or otherwise prepared their case.

Despite the Saltses' decision to fire Thorne and his admitted lack of preparation, the trial judge indicated at the pretrial conference that he would not grant any further continuances and would proceed with the scheduled trial date of October 3, 2005. When asked whether he would allow the Saltses time at least to retain new counsel, the trial judge demurred:

> Now, I don't know what the problem is. And again, I don't care what the problem is. That's not my prerogative to look into the relationship between attorneys and their clients. It has taken me in the neighborhood of six to eight months to arrive at a trial setting for this, not entirely because of things the defendants did, but a portion of that had to do with the fact that the courthouse in Prentiss County was being remodeled or whatever, and we didn't have a courtroom to try this case, but finally it is set for trial. I have a venire panel coming in on Monday and, any thoughts about a continuance in this case, you can abandon that. Any attorney who comes in to it at this late date must assume that it is for trial, because I'm not going to continue it.

The Salts were in the end able to retain new counsel, Jim Waide, who continues to represent them in this proceeding.

On the morning the trial was scheduled to begin—before the jury was selected and sworn and before opening arguments—Waide filed a motion to dismiss, or in the alternative, a motion to continue.[2] Waide argued that "[t]here

---

[2] The state-court trial record indicates that the court held oral argument on the motion immediately before voir dire.

No. 10-60201

is an obvious conflict of interest between the Defendants," in light of the fact that they were both charged with embezzlement in connection with their family business, but both denied any embezzlement or knowledge of embezzlement. Further, "during various time periods one Defendant operated the business and during other times the other Defendant operated the business."

Waide elaborated on this conflict of interest in court the morning of the trial:

> Your honor, the indictment in this case charges embezzlement. It charges both defendants with embezzlement. There's extensive discovery in the case, boxes of materials, but I can't see anything that identifies which defendant is charged with embezzlement at which times. And I also know that the proof is going to show that at various years, it goes on for 17 years, but at various times one of the defendants wouldn't even been working in the business during some of those times. There's an obvious conflict of interest. It's obvious that one attorney should represent one defendant and should argue that they haven't shown that my defendant was even working there at that particular time. So there's an obvious conflict of interest, and the prosecution knowing this case has gone on for 17 years and investigating it would have certainly known that from time to time which one of them was active in the business. And one lawyer can't very well point the finger at one defendant and not at the other one and say, well my—for example, I might say the last three or four years, Mr. Salts has been working outside the business, hasn't even been involved in the business. But it's hard to make that argument representing both.

The trial court declined to inquire further into the circumstances of this alleged conflict of interest and denied the motion to continue based on the need to obtain separate counsel, apparently believing that the Saltses had previously waived any conflict of interest. After disposing of the conflicts issue, the trial court proceeded to select the jury and try the case.

At trial, the Saltses were each convicted of four counts of embezzlement and each were sentenced to ten years imprisonment in Mississippi state prison.

No. 10-60201

### B. The Saltses' habeas petition

After the Saltses were convicted at trial, they filed a direct appeal to the Mississippi Court of Appeals, which resulted in a published opinion.[3] On direct appeal, the Saltses raised both claims that they now advance in this habeas proceeding: (1) ineffective assistance of counsel stemming from joint representation, and (2) ineffective assistance of counsel stemming from the trial court's denial of a continuance. The state court denied relief on both claims. The Saltses petitioned the Mississippi Supreme Court for review, and their petition was denied without opinion.

After exhausting their state remedies,[4] the Saltses petitioned for a writ of habeas corpus in the United States District Court for the Northern District of Mississippi. A magistrate judge reviewed their petition and recommended that the district court issue the writ based on their conflict-of-interest claim. The district court considered objections from both parties and then adopted the magistrate judge's recommendation. The district court thus granted the Saltses' petition on their joint representation claim but not their denial-of-continuance claim. The State appealed from the district judge's ruling. The Saltses cross-appealed, arguing that they were entitled to relief on both of their claims.

## II. STANDARD OF REVIEW

### A. Habeas standard of review

In reviewing requests for federal habeas relief, this Court reviews the district court's findings of fact for clear error and its conclusions of law de novo,

---

[3] *Salts*, 984 So.2d 1050.

[4] The State conceded in its answer that the Saltses exhausted their state remedies, and therefore waived objection on exhaustion grounds. *See* 28 U.S.C. § 2254(b)(1), (3); *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999). The State's waiver is understandable, as, contrary to the dissent's assertion, the Saltses discussed the issues raised in their petition, including *Holloway v. Arkansas*, 435 U.S. 475 (1978), in their briefs to the state trial court and court of appeals.

No. 10-60201

"'applying the same standards to the state court's decision as did the district court.'"[5] The Saltses' petition is subject to the heightened standard of review under the Anti-Terrorism and Effective Death Penalty Act (AEDPA).[6] AEDPA prohibits habeas relief unless the adjudication of the claim either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7]

"A state court decision is 'contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases.'"[8] It may also be contrary to established precedent if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."[9] It is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."[10] AEPDA requires us to presume that the state

---

[5] *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (quoting *Harrison v. Quarterman*, 496 F.3d 419, 423 (5th Cir. 2007)).

[6] *See* 28 U.S.C. § 2254.

[7] 28 U.S.C. § 2254(d)(1), (2).

[8] *Wallace v. Quarterman*, 516 F.3d 351, 354 (5th Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)) (alteration in *Wallace*).

[9] *Taylor*, 529 U.S. at 406.

[10] *Id.* at 407.

No. 10-60201

court's findings of fact are correct "unless the petitioner rebuts that presumption by clear and convincing evidence."[11]

### B. No "qualified-waiver" standard of review applies here.

The Saltses argue that we should apply a different standard of review to the State's appeal in this case because it failed to timely object to the magistrate judge's findings and recommendations (F&R). This Court treats failure to timely object to a Magistrate Judge's F&R as a "qualified waiver" of the right to appeal:

> failure to object timely to a magistrate judge's report and recommendation bars a party, except upon grounds of plain error . . . , from attacking on appeal not only the proposed factual findings . . . , but also the proposed legal conclusions, accepted . . . by the district court, provided that the party has been served with notice that such consequences will result from a failure to object . . . .[12]

Here, we decline to find a "qualified waiver" of the right to appeal—and thus we decline to vary our standard of review—because we conclude that the State's objections to the F&R were timely. The State filed its objections to the F&R four days after the appointed deadline, at which time it also sought leave of the district court to enlarge the time for filing. The State cited as its reason for delay a malfunction in the electronic court filing (ECF) system. The district court granted the State's request for more time.

Because the district court extended the State's deadline to object to the F&R, its filing was timely unless the district court abused its discretion in extending the deadline.[13] When a party moves to extend a deadline provided by the Federal Rules of Civil Procedure after the deadline has passed, the district

---

[11] *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).

[12] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

[13] We review enlargements of time by the district court for abuse of discretion. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 (5th Cir. 2006).

8

No. 10-60201

court may grant the motion "for good cause . . . if the party failed to act because of excusable neglect."[14]  A leading treatise on civil procedure notes that "[t]he district judge enjoys broad discretion to grant or deny an extension," and the "excusable neglect" standard is  "intended and has proven to be quite elastic in its application."[15]   Professors Wright and Miller lay out a number of factors relevant to the determination of "excusable neglect": (1) "the possibility of prejudice to the other parties," (2) "the length of the applicant's delay and its impact on the proceeding," (3) "the reason for the delay and whether it was within the control of the movant," and (4) "whether the movant has acted in good faith."[16]

We find that the district court did not abuse its "broad discretion" in granting the State's request for a four-day extension.  The record reflects no prejudice to the Saltses in the four-day delay, nor is there any indication that the State's delayed response had any impact on the proceeding.  There is no evidence of bad faith on the State's part.  The Saltses argue that the State's delay was within its control, and that the onus was on the State to ensure that its electronic document had been filed properly.  This may be true, but it does not render an abuse of discretion the district judge's determination that the State's neglect was excusable.  Thus, we conclude that the State timely objected to the F&R and decline to find a qualified waiver of the right to appeal.

### III. JOINT REPRESENTATION

Multiple representation of criminal defendants may deprive them of their Sixth Amendment right to counsel.  Such representations may "'prevent an

---

[14] FED. R. CIV. P. 6(b)(1)(B).

[15] WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1165 (collecting cases, including a number of Fifth Circuit cases).

[16] *Id.*

No. 10-60201

attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.'"[17] It may also preclude a defense attorney from "exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution."[18]

Despite these dangers, the Supreme Court long ago held that joint representation of criminal defendants "is not *per se* violative of constitutional guarantees of effective assistance of counsel."[19] Two lines of cases are relevant to a determination of when a joint representation deprives a defendant of his right to counsel so as to require reversal of his conviction: one derives from the Supreme Court's decision in *Holloway v. Arkansas*[20] (which applies where counsel objects at trial to a multiple representation), the other from *Cuyler v. Sullivan*[21] (which governs multiple-representation situations where no timely objection was raised).

The state court denied the Saltses' joint-representation ineffective-assistance claim because it found that: (1) the Saltses had waived their right to conflict-free representation, and (2) they failed to prove an actual conflict of interest stemming from the joint representation. The state court's first rationale—waiver—was an unreasonable determination of the facts in light of

---

[17] *Wheat v. United States*, 486 U.S. 158, 160 (1988) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978)).

[18] *Holloway*, 435 U.S. at 490.

[19] *Id.* at 482.

[20] 435 U.S. 475 (1978).

[21] 446 U.S. 335 (1980).

evidence in the state-court record. The second rationale—failure to demonstrate an actual conflict of interest—was contrary to clearly established law.

### A. The Saltses did not waive the right to counsel.

The Mississippi Court of Appeals held first that the Saltses had waived any objection to the joint representation. This holding was an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.[22]

When the Saltses moved to continue the case in light of a joint-representation conflict of interest, the trial judge denied their motion because of his "recollection" that the Saltses had waived any objection to the conflict.[23] The record is wholly devoid of documentation or evidence of this purported waiver, as noted by the state appeals court,[24] the district court, and even the respondents in this proceeding. Moreover, by the end of trial, the trial judge's "recollection" of the Saltses' waiver had changed substantially. At a post-trial motion hearing, the trial judge averred that the Saltses' counsel had failed to raise a number of concerns, including potential conflicts of interest, in advance of trial. At that point, the judge said, "*I don't recall any particular argument concerning the conflict of interest.* There was some discussion about a severance, which I denied."

Despite this complete lack of evidence of waiver, the state appeals court nevertheless concluded that the Saltses had waived their right to conflict-free representation. This determination rested solely on the earlier "recollections" and "averments" of the trial judge and, somewhat incredibly, counsel for the

---

[22] *See* 28 U.S.C. § 2254(d)(2).

[23] *Salts*, 984 So.2d at 1061 (discussing state trial-court record).

[24] *Id.* at 1062 ("A diligent search of the record has not revealed whether any discussion of any conflict of interest was made or waived in court.").

State. Of course, the State's position on the matter has also changed; it now concedes that "the state court erred" in its waiver determination. Given the lack of *any* supporting evidence in the record and the trial judge's about-face on the issue, this conclusion was an unreasonable determination of fact.

The Mississippi court's waiver determination was also contrary to law: specifically, the "high standar[d] of proof for the waiver of constitutional rights [set forth by the Supreme Court in] *Johnson v. Zerbst*."[25] Indeed, in *Zerbst*, the Court reiterated that courts are to "'indulge every reasonable presumption against waiver' of fundamental constitutional rights."[26] In finding a waiver based on the "recollections" of the trial judge—which he later recanted—with no corroborating record evidence, the state appeals court neglected the Supreme Court's command to indulge "every reasonable presumption" against waiver.

### B. The state court's denial of the Saltses' claim was contrary to clearly established law.

In the alternative, the state appeals court denied the Saltses' joint-representation claim for failure to demonstrate an actual conflict of interest. The court applied Mississippi law, concluding that "a court need conduct an inquiry into the propriety of a joint representation only when an actual conflict has been shown."[27] The state court thus applied a rule that directly conflicts with controlling Supreme Court precedent, rendering its decision contrary to law under 28 U.S.C. § 2254(d)(1). Under the correct rule, the Saltses *are* entitled to relief on their joint-representation ineffective-assistance claim.

---

[25] *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2268 (2010) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

[26] *Zerbst*, 304 U.S. at 464 (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937); *Hodges v. Easton*, 106 U.S. 408, 412 (1882)).

[27] *Salts*, 984 So.2d at 1063.

No. 10-60201

### (1) The state court's rule was contrary to Supreme Court precedent.

To begin, we consider the Supreme Court's seminal multiple-representations precedents: *Holloway v. Arkansas* and *Cuyler v. Sullivan.* The Court's decision in *Holloway* represents "an automatic reversal rule" that applies "where counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict."[28] In other words, where trial counsel timely raises a possible conflict of interest to the trial court, reversal is automatic where the judge "fail[s] to either appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel."[29]

The Supreme Court subsequently clarified, however, that *Holloway*'s automatic reversal rule does not apply in situations where defense counsel fails to timely object to a multiple representation. In *Cuyler v. Sullivan*, the Supreme Court "declined to extend *Holloway*'s automatic reversal rule" to a situation where "[n]either counsel nor anyone else objected to the multiple representation."[30] Indeed, "absent objection, a defendant must demonstrate that 'a conflict of interest actually affected the adequacy of his representation.'"[31]

Here, the state appeals court, contrary to *Holloway*, held that a trial court need only inquire into the propriety of a joint representation when an actual

---

[28] *Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (discussing the Court's earlier decision in *Holloway*, 435 U.S. 475).

[29] *See Holloway*, 486 U.S. at 160 ("The judge then failed either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel. We hold that the failure, in the face of the representations made by counsel weeks before trial and again before the jury was empaneled, deprived petitioners of the guarantee of 'assistance of counsel.'").

[30] *Mickens*, 535 U.S. at 168 (discussing *Cuyler*, 446 U.S. at 348–49).

[31] *Id.* (discussing *Cuyler*, 446 U.S. at 348–49)

13

conflict has been shown.[32] We note that the court did not decline to apply *Holloway* because it found that Waide's objection was untimely or made for dilatory purposes. Rather, it held that, categorically, "a court need conduct an inquiry into the propriety of a joint representation *only* when an actual conflict has been shown."[33]

The state appeals court's decision was contrary to law because it wrongly held that a defendant must always show actual conflict, even where the trial court failed to investigate counsel's timely motion.[34] In other words, the state court held that it is never sufficient for a defendant to bring to the court's attention a *potential* conflict; he must always concretely show an actual conflict. This stated rule directly conflicts with the Supreme Court's decision in *Holloway*, which addresses itself to the possibility or potential for conflict. The *Holloway* Court spoke of the trial judge's duty "to refrain from embarrassing counsel in the defense of an accused by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge

---

[32] *See Salts*, 984 So.2d at 1063 ("Because the Saltses never showed an actual conflict of interest, there was no need for any inquiry by the trial court into the propriety of joint representation.").

[33] *Salts*, 984 So.2d at 1063 (emphasis added).

[34] The dissent objects to this characterization of the rule applied by the state appeals court. The dissent , however, would read the state appeals court's opinion to state what it does not, rendering the state court's use of "only" a nullity. Indeed, even the dissent's characterization of the state appeals court's rule would be problematic. *Cuyler*, the Supreme Court case the dissent presumes the state appeals court applied, requires a showing of actual conflict when no objection, and thus no inquiry, occurred. *See Cuyler*, 446 U.S. at 348–50. When such a conflict is shown, reversal is required. *Id.* The state court of appeals, however, stated that an inquiry need only occur when an actual conflict was shown. Of course, if an actual conflict is shown, then, under *Cuyler*, the defendants have demonstrated a Sixth Amendment right to separate counsel. An inquiry at that point would serve no purpose.

from those of his first client, when the *possibility* of that divergence is brought home to the court."[35]

The Supreme Court's subsequent discussions of *Holloway* demonstrate that its automatic reversal rule does not require a showing of actual conflict. Indeed, in both *Cuyler* and *Mickens*, the Court reiterated the *Holloway* rule in all its simplicity: "*Holloway* requires state trial courts to investigate timely objections to multiple representation."[36]  The Court in *Cuyler* did explain that, *absent a timely objection* to a multiple representation, "nothing . . . requires state courts *themselves* to initiate inquiries into the propriety of multiple representations in every case."[37]  But this holding does nothing to alter the *Holloway* rule—reiterated by the Court in *Mickens*—which "creates an automatic reversal rule . . . where defense counsel is forced to represent codefendants over his timely objection, *unless* the trial court has determined that there is no conflict."[38]

In neither of these subsequent decisions did the Supreme Court hold that the *Holloway* rule only operates on a showing of actual conflict.  This makes sense: to hold otherwise would vitiate the protections of *Holloway*'s per se rule. The *Holloway* Court recognized that, where a trial court has failed to investigate a *potential* conflict of interest brought to its attention, the record may not conclusively reflect that conflict.  By failing to investigate a potential conflict, "the trial judge cut[s] off any opportunity of defense counsel to do more than

---

[35] *Holloway*, 435 U.S. at 484–85 (quoting *Glasser v. United States*, 350 U.S. 60 (1942) (emphasis from *Holloway* omitted, new emphasis added)).

[36] *Cuyler*, 446 U.S. at 346.

[37] *Id.* at 347 (emphasis added).

[38] *Mickens*, 535 U.S. at 168 (emphasis added).

make conclusory representations."[39]  In other words, the trial court's failure to investigate potential conflicts timely brought to its attention may leave the record devoid of specific and particularized evidence of such a conflict.

The State nevertheless argues that the state trial court implicitly applied *Holloway*, and found it inapplicable because it found Waide's motion to be dilatory.  Consequently, the State argues, we owe deference to that decision, and may only grant habeas if it involved an unreasonable application of *Holloway*.  We do not agree.

First, it is not at all clear that the trial court's failure to investigate the potential conflict rested on a finding that Waide's motion was dilatory.  Rather, the judge believed, incorrectly, that he had previously addressed the conflict and the Saltses had waived any objection to conflict.  At the hearing on Waide's motion, the parties disputed the support in the record for such a waiver and Waide requested that his clients be put on the stand to testify, at which point the judge stated:

> Now, if we're going to have a hearing, we're going to put Mr. Thorne on the stand, too, and find out what the discussion was.  My recollection is that [the Saltses' waiver of this conflict of interest] was aired in chambers and in open court, and this is another of the last-minute tactics—I'm not going to grant a severance, or a continuance, or anything else.  We're going to try it.

As Thorne, the Saltses' previous counsel, was not present, any such hearing would require significant delay.  Further, even if the oblique reference to "last-minute tactics" constitutes a finding that Waide's motion was made for dilatory purposes, this conclusion rests on an unreasonable determination of facts.  The *reason* he believed the motion to have been a "last-minute tactic" was that he believed he had already addressed the issue.  As noted above, the record is

---

[39] *Holloway*, 435 U.S. at 484 n.7.

wholly devoid of evidence of this fact, and the judge recanted this "recollection" after the trial concluded.

Second, AEDPA directs this court to consider a state court's "decision."[40] It is well settled that we look to the "last reasoned opinion," and where a higher state court has ruled on a petitioner's motion on grounds different than those of the lower court, we review the higher court's decision alone.[41]  Here, regardless of the ground upon which the trial court denied petitioner's claim, the state appeals court, as noted above, dismissed that claim because it erroneously concluded that a petitioner must always show an actual conflict.  Accordingly, we review only the state appeals court's decision.  As stated above, we find that decision was contrary to established Supreme Court precedent.

In sum, by applying the rule it did—that "a court need conduct an inquiry into the propriety of a joint representation only when an actual conflict has been shown"—the state appeals court applied a rule directly contrary to *Holloway*'s imperative that state trial courts investigate timely objections to joint representation.  In other words, the state court elevated *Cuyler* to a universal standard, to the detriment of *Holloway*, "apply[ing] a rule that contradicts the governing law set forth in [the Supreme Court's] cases."[42]  This is the very definition, under AEDPA, of the phrase "contrary to clearly established precedent."[43]

---

[40] 28 U.S.C. § 2254(d).

[41] *See Ylst. v. Nunnemaker*, 501 U.S. 797, 801, 803 (1991) (finding lower court's dismissal of claim on grounds of procedural default not "immortal" where higher court reaches the merits of a federal claim)

[42] *Taylor*, 529 U.S. at 405.

[43] *Id.*

No. 10-60201

### *(2) Standard of review for relief.*

Next, the Court must determine the standard by which to determine whether the Saltses are entitled to relief under *Holloway*. The dissent argues that *Neal v. Puckett*[44] directs, under the guise of confining our review to the state court's decision, that we ignore the state appeals court's application of law contrary to Supreme Court precedent, and instead presume the state appeals court identified and applied *Holloway*. The Court is then to determine whether it can imagine any possible reasonable analysis of that precedent that could support the state appeals court's decision. *Neal*, however, considered a state court of appeals's decision identifying the correct legal rule and the question was solely whether the state court was unreasonable in its application of that rule.[45] *Neal* does not speak to the standard of review where a state court applies erroneous law.

Nor can *Neal* be read beyond the situation before the Court there, to stand for the proposition that, to grant habeas relief, the habeas court must always determine that the relevant legal tests could not have been reasonably applied by the state court to deny relief. Such a reading would require, for example, a habeas court to assume a state court applied legal rules it did not, and then ask whether such rules could still reasonably support the result. That reading, however, would run afoul of the Supreme Court's command that, where a state court does not apply a legal test, "our review is not circumscribed by a state court conclusion."[46]

---

[44] 286 F.3d 230 (5th Cir. 2002) (en banc).

[45] *See id.* at 246.

[46] *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (holding, where state court analyzed only inadequate performance prong of *Stickland*, Court's review of prejudice prong was de novo); *see also Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (holding, "[b]ecause the state courts found the representation adequate, they never reached the issue of prejudice . . . , and so we examine this element of *Strickland* claim de novo . . ."); *Pondexter v. Quaterman*, 537 F.3d 511,

No. 10-60201

Indeed, applying *Neal* to the case before us would ignore the text of AEDPA. The statute states habeas relief shall not be granted unless the state court's adjudication "resulted in a decision that was contrary to, *or* involved an unreasonable application of, clearly established Federal law . . . ."[47]   The Supreme Court, in the seminal AEDPA case of *Williams v. Taylor*, stressed the need to provide these two grounds with separate and independent meaning.[48] The Saltses have shown that the state appeals court's decision was "contrary to" clearly established Federal law. That is sufficient to remove § 2254(d)(1)'s bar to relief. They need not also show that the state appeals court's decision involved an "unreasonable application" of such law.[49]

Accordingly, as the Saltses have demonstrated that the Mississippi Court of Appeal's decision was "contrary to" established Supreme Court precedent, they may obtain relief if they can show, on de novo review, that they are "in custody in violation of the Constitution or laws or treaties of the United States."[50]

---

523–24 (5th Cir. 2008) (finding *Wiggins* and *Rompilla* changed law after Fifth Circuit had previously reversed district court, relying on *Neal v. Puckett*, for preforming de novo review, rendering law-of-the-case doctrine inapplicable). Of course, where a state court summarily denies a petitioner's motion, and provides no statement of its reasons, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). Here, however, the state court provided its reason, and its reason was contrary to established Supreme Court precedent.

[47] 28 U.S.C. § 2254(d)(1) (emphasis added).

[48] *See* 529 U.S. at 404.

[49] *See Williams*, 529 U.S. at 412 ("Under § 2254(d)(1), the writ may issue only if one of the two following conditions is satisfied—the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States'" (alteration in original)).

[50] 28 U.S.C. § 2254(a); *see also Williams*, 529 U.S. at 395–96 (analyzing petitioner's *Strickland* claim de novo after determining state court's decision was "contrary to" and

19

No. 10-60201

### *(3) The Saltses are entitled to relief under* Holloway.

*Holloway's* rule—not *Cuyler's* actual-conflict standard—controls the Saltses' joint-representation claim in this case because the Saltses timely objected to their joint representation. Their newly retained attorney, Mr. Waide, objected to the representation before trial began, before the jury was selected and sworn. This objection was not untimely or made for dilatory purposes, and it was sufficient to trigger the trial court's duty to investigate the propriety of the joint representation.[51] Because the trial court failed to investigate, reversal is required under *Holloway*.

The Saltses did not retain attorney Waide until several days before their trial was scheduled to begin. The timing of their retention of Waide coincided with their previous counsel announcing to the court that he was not prepared to try the case. On the Monday morning trial was scheduled to begin, after spending the weekend reviewing the Saltses' case, Waide moved to dismiss the charges against them, or in the alternative, to continue the trial setting so they could retain separate counsel. The motion informed the court of "an obvious conflict of interest between the Defendants," given that they both denied any knowledge of the alleged embezzlement. Further, the motion explained that "during various time periods one Defendant operated the business and during other times the other Defendant operated the business."

---

"involved an unreasonable application of" Supreme Court precedent); *Barker v. Fleming*, 423 F.3d 1085, 1094–95 (9th Cir. 2005) (analyzing *Brady* claim de novo after determining state court's decision was contrary to Supreme Court precedent), *cert denied*, 547 U.S. 1138.

[51] The district court considered at length another objection to the joint representation, this one filed by attorney Farese, the Saltses' original trial counsel. Shortly after the proceedings began, Farese moved to withdraw from the representation, citing, without elaboration, "two irreconcilable conflicts." The district court found that this motion was sufficient to trigger the trial court's duty to investigate under *Holloway*. We need not consider this issue because we conclude that Waide's pretrial motion was independently sufficient.

No. 10-60201

Waide elaborated on this motion in open court the morning trial was scheduled to begin:

> Your honor, the indictment in this case charges embezzlement. It charges both defendants with embezzlement. There's extensive discovery in the case, boxes of materials, but I can't see anything that identifies which defendant is charged with embezzlement at which times. And I also know that the proof is going to show that at various years, it goes on for 17 years, but at various times one of the defendants wouldn't even been working in the business during some of those times. There's an obvious conflict of interest. It's obvious that one attorney should represent one defendant and should argue that they haven't shown that my defendant was even working there at that particular time. So there's an obvious conflict of interest, and the prosecution knowing this case has gone on for 17 years and investigating it would have certainly known that from time to time which one of them was active in the business. And one lawyer can't very well point the finger at one defendant and not at the other one and say, Well my—for example, I might say the last three or four years, Mr. Salts has been working outside the business, hasn't even been involved in the business. But its hard to make that argument representing both.

Waide's motion to the trial court was sufficiently detailed to alert the court to a potential conflict of interest, thus triggering the trial judge's duty under *Holloway* to either allow for separate counsel or investigate further to ensure no conflict existed.[52]

The State urges that Waide's motion did not trigger a duty to investigate under *Holloway* because the motion was not timely. It is true that the Supreme Court in *Holloway* clarified that "[w]hen *an untimely motion for separate counsel is made for dilatory purposes*, our holding does not impair the trial court's ability to deal with counsel who result to such tactics."[53] But the record here does not

---

[52] The state does not argue that this conversation on the morning of trial was itself a *Holloway* hearing, nor did the state appeals court conclude that this pretrial conversation was sufficient "investigation" of the potential conflict under *Holloway*.

[53] *Holloway*, 435 U.S. at 486–87 (emphasis added).

21

support a conclusion that Waide's motion was "an untimely motion . . . made for dilatory purposes."[54]

The Supreme Court in *Holloway* did not explicitly define the phrase "untimely motion . . . made for dilatory purposes." However, the Court did note that, in that case, all of the defendant's objections to the joint representation were timely, even a motion made on the morning trial was scheduled to begin, before the jury was empaneled.[55] The motion in *Holloway* is difficult to distinguish from Waide's motion in this case. Like the defendant's attorney in *Holloway*, Waide objected the morning trial was scheduled to begin, before the jury was selected and sworn.[56] For Waide, this was the earliest opportunity he had to object to the joint representation.

Perhaps more important than the precise timing of Waide's motion in this case is that there is no indication whatever that it was "made for dilatory purposes." Waide objected to the Saltses' joint representation at the earliest possible opportunity: when he appeared in court the Monday after the Saltses

---

[54] As there is no dispute of fact pertaining to the timing of or motive for Waide's motion, there is no need to accord deference to any state-court findings of fact as to such. *Cf. Valdez*, 274 F.3d at 948 & n.11 (noting § 2254(e)(1)'s presumption of correctness applies to state court findings of fact and "unarticulated findings which are necessary to the state courts conclusion of mixed law and fact"). The question here is whether the undisputed timing of Waide's motion was legally significant under *Holloway*, a question of law which, as stated above, we review here de novo. *See Nakimbugwe v. Gonzales*, 475 F.3d 281, 284 (5th Cir. 2007) (noting, although "[m]any determinations of timeliness are based on . . . assessment of facts and circumstances," determinations of timeliness grounded in legal construction are questions of law).

[55] In *Holloway*, the Supreme Court described both of defense counsel's motions as "timely." 435 U.S. at 476 ("Petitioners, codefendants at trial, made timely motions for appointment of separate counsel . . . ."). One of the motions was made several weeks before trial and one made "before the jury was empaneled." *Holloway*, 435 U.S. at 484.

[56] The State makes much of the fact that Waide's motion asked for a dismissal in the alternative to a continuance because "a jury ha[d] already been called." It is unclear why Waide believed it was significant that potential jurors had been called for duty, given that jury selection had not begun. We do not find this fact significant to our *Holloway* analysis.

retained him.  The record here indicates that the Saltses retained Waide on Thursday, and that he spent the weekend reviewing their case, including seventeen boxes of documents.  Waide determined promptly that the Saltses had conflicting interests and brought this conflict to the court's attention when it opened for business Monday morning.  Moreover, although the Saltses were represented for a two-year period prior to trial, in which time their previous counsel filed a number of continuances, there is no indication in the record that the Saltses themselves were the source of the delay.[57]  Rather, the record reflects the delays were largely the result of illnesses in the family of the Saltses's previous counsel and courthouse construction.  Finally, there is no indication that Waide's objection was meritless or was based on a misrepresentation of facts.[58]

Our conclusion that Waide's objection was not "untimely . . . [or] made for dilatory purposes" should not be read to suggest that an objection to a joint representation made in the hours before trial begins will *always* pass muster under *Holloway*.  Rather, our holding reflects the unique circumstances surrounding this case.  The Saltses retained Waide at the last minute, after their previous counsel announced to the court that he was unprepared to try their case on account of serious illness in his family.  Our conclusion that Waide's motion was not made for dilatory purposes might be different if he himself had represented the Saltses for longer, and yet had waited until the last minute to object to the joint representation, or where the record reflects that the defendants themselves have been the cause of delay.

---

[57] In this aspect, we agree with the state court.  *See Salts*, 984 So.2d at 1058 (noting "the record reflects that the Saltses were not personally the source of the multiple continuances").

[58] *See Holloway*, 435 U.S. at 486 n.10 (noting, although counsel filed dilatory motions, the "courts have abundant power to deal with attorneys who misrepresent facts").

No. 10-60201

In sum, the state court's decision was contrary to law because it applied a rule that contradicts the governing law set forth in the Supreme Court's cases. Under the proper rule, the Saltses are entitled to relief on their ineffective-assistance claim stemming from joint representation.[59]  We thus AFFIRM the district court's conditional grant of habeas relief, vacating the Saltses' convictions and providing the State a window of 120 days in which to commence a new prosecution.

---

[59] We decline to reach the claim raised in the Saltses' cross-appeal—an ineffective-assistance claim stemming from the trial court's denial of a continuance.  Because we affirm the district court's grant of relief on the Saltses' multiple-representation claim, we need not consider their alternative claim.

No. 10-60201

EDITH H. JONES, Chief Judge, dissenting:

With due respect to my colleagues, I cannot agree that the Mississippi courts' denial of relief to the Saltses was "contrary to" the Supreme Court's pronouncements. In *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Court emphasized, "If [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be. . . . It preserves authority to issue the writ *where there is no possibility fairminded jurists could disagree* that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington,* 131 S. Ct. at 786 (emphasis added) (internal quotation marks and citation omitted). The majority instead critiques the Mississippi courts' reasoning in a manner more appropriate to direct appellate review than to the deferential review countenanced by AEDPA standards. To be precise, the majority totally overlooks that federal courts may inquire only into the propriety of state court decisions, not the correctness of all their reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). Even more pertinent, the majority erroneously faults the Mississippi courts for failing to cite and ruling "contrary to"*Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173 (1978). The Supreme Court holds, however, that state courts need not expressly cite or even be aware of Supreme Court precedents–as long as their decisions do not contradict the precedents. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002).

A proper AEDPA review of the state court record and judicial decisions reveals, in my view, a very real possibility fairminded jurists could disagree whether the defendants timely invoked their counsel's alleged conflict of interest and were entitled to relief.[1] Based on this failure, *Holloway* did not apply and

---

[1] I do not quarrel with the majority's resolution of the due process claim, nor with its conclusion that the state court's finding of waiver of any objection to joint representation was unreasonable under § 2254(d)(2). The majority should have added that the Saltses bore the

25

the state courts did not "contradict" *Holloway* in requiring proof of an actual conflict before reversing the verdict. *See Cuyler v. Sullivan*, *infra.* Nor was the state courts' "decision" "unreasonable" when measured against the Supreme Court precedents. 28 U.S.C. § 2254(d)(1). We have no authority to overturn these convictions.

To explain the basis for the state court decisions, I supplement the majority's description of the record, review the applicable Supreme Court precedents, and describe the flaws in the majority's reasoning.

## 1. Background

The majority opinion under-emphasizes the extent to which the Saltses successfully delayed trial and fails to recount the multiple deadlines for pretrial motions. Significantly, it also fails to convey the trial court's finding that the defense's motion regarding joint representation was untimely.

Michael and Marie Salts were convicted of embezzlement in connection with their funeral-home business. They collected and kept for themselves funeral insurance payments from customers, many of them old and poor, whose insurance policies had actually been terminated. They were indicted on May 12, 2003, but their trial did not begin until October 3, 2005.

The Saltses' first attorney, Steve Farese, was retained on July 3, 2003, and moved to withdraw on September 2, 2003. His motion to withdraw cited "two separate irreconcilable conflicts" which would leave "Defense Counsel [] ethically and legally unable to defend either of the Defendants." It also noted "that the Defendants have been unable to fulfill the terms of their agreement of employment of Mr. Farese." The court granted the motion, set a status hearing for September 29, 2003, and continued the case until sometime during the

---

burden of overcoming the state court's waiver finding by clear and convincing evidence. § 2254(e)(1). *See Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001).

No. 10-60201

February 2004 term. Apparently beginning at the time Farese was released, the Saltses were represented by Michael Thorne.[2]

Trial was scheduled for March 3, 2004. The Saltses requested a continuance on February 23. Thorne said he had not yet received discovery from Farese, though he had requested it on February 13 (three weeks before trial was scheduled). He also noted that defendants might need to obtain an accountant to testify. He said that he could not properly prepare to represent the defendants without more time. The state did not object; the motion was granted and trial was rescheduled for June 22, 2004.

On June 9, the Saltses requested a second continuance. Thorne said he had been unable to prepare for trial properly "due to other litigation involving these defendants." He again cited the possible need for an accountant and said he could not render adequate assistance if the case were not continued. The state did not object to this request, and it was granted. Trial was rescheduled for October 11, 2004.

On September 28, the Saltses requested a third continuance. Thorne repeated his claim that he had not been able to prepare properly due to other litigation involving these defendants, and he said that he could not render adequate legal assistance absent a continuance. This time, the state was opposed. The state observed that this was the third trial date and said it risked real impairment of the prosecution in light of the age of the victims who would serve as witnesses. Five of the six victims ranged from sixty-five to eighty-one years of age, and each victim was a material, essential witness. Nevertheless, the court granted a continuance. Trial was next scheduled for February 28,

---

[2] The State requested that Farese not be permitted to withdraw until the Saltses obtained new counsel. The Saltses were ordered to appear with new counsel at the September 29, 2003 hearing. *Id*. at 66.

27

2005. It was continued again, however, after the newly assigned judge recused himself.

Trial was next scheduled for June 27, with a proviso that it might be continued if renovation of the courthouse was not complete by the trial date. On June 24, the Saltses moved for a fifth continuance, the fourth at their request. Thorne said that he would be leaving town on June 26, to travel to Florida for his wife to seek medical treatment. He also said he had heard that the courthouse was still undergoing renovations.[3] The state countered that it was willing to assemble a Prentiss County jury in a neighboring county, even if the Prentiss County courthouse was unavailable, and reiterated its objections to further delay, noting that the oldest victim was now eighty-two. The court granted a fifth continuance and scheduled trial for September 6, 2005, setting deadlines for discovery and pretrial motions of July 15 and August 1 respectively. Both parties were explicitly ordered to "file all motions having to do with (1) change of venue, (2) discovery, (3) admissibility of evidence, (4) in limine and any other matters on or before the 1st Day of August, 2005, or [they] shall be deemed waived by the court."

The court extended the discovery deadline in response to an agreed-to request by Defendants, which was "due to a medical emergency." It also extended the motion deadline to August 5. Defendants filed their witness list on August 3. Thorne filed various motions for the Saltses on the deadline of August 5, including a motion for change of venue, a motion to produce sealed records, a motion to produce the grand jury list, a motion to dismiss, and a motion for discovery of additional items.

On August 16, the day before the motion hearing, the Saltses moved again for continuance, the sixth continuance and the fifth at their request. The motion

---

[3] Ultimately the trial would be held in a neighboring county, further delaying it, at Defendants' request.

said Thorne's father had become seriously ill and was in the hospital, and requested a delay of the motion hearing.  The court granted the motion, continuing the trial and setting the motion hearing for September 6.

The court granted the Saltses' motion for a transfer of venue and set a new trial date—the seventh—of October 3, 2005, and a new deadline for "all pretrial motions" of September 27, "or such motions and matters shall be deemed waived by the court," offering both parties a third deadline for pretrial motions, even after a number of pretrial motions had been dealt with.

The Saltses moved for a seventh continuance on September 28, "due to illness in Defendant counsel's immediate family."  Thorne also requested "additional time in which to prepare for the trial of this matter to properly defend this case."  He did not in this motion, as he had in previous motions, say he would be unable to represent the defendants without additional time.

On September 29, the Saltses fired Thorne, citing "a difference of opinion on the way this case should be represented."  On Friday, September 30, Jim Waide, their new attorney, filed an entry of appearance.  On Monday, the morning of trial, almost a week after the third final motions deadline, Waide entered a motion to dismiss or continue, arguing that there was "an obvious conflict of interest" between the defendants. He argued that separate attorneys would each be able to argue that his client had not been working at the business during the relevant period, but Waide could not make this argument as joint counsel.  The trial court denied the motion based in part on its recollection that the Saltses had waived any conflict.  The court said that this appeared to be

> another of the last-minute tactics – I'm not going to grant a severance, a continuance or anything else. We're going to try it.  It's taken me six months in an effort to get this thing to the courthouse as it is.  And Mr. Waide, I understand that you have just come into this case.  Because of that, that's the only reason I even took the matter up at all.  But we are going to proceed with the trial of the case.

No. 10-60201

The Saltses were convicted at trial. Waide re-raised the conflict issue as a ground for a new trial. In response the judge said:

> I think I need to make some observations concerning, first of all, the development of this case over a period of several years. The defendants from the very beginning had every opportunity to raise the question of conflict of interest as between the defendants. They were represented by counsel for the entire period of time until virtually the day before trial began.
>
> Mr. Waide, I have great empathy for you having stepped in to this case at the last instant, but in circumstances like that, counsel entering the case kind of play the ball where it lies. What has happened up to that time is in this instance according to your theory of the case is unfortunate, but nevertheless, I can tell you and the Salts that I personally insisted that Mr. Thorne file motions, and only then did he respond with motions that I insisted with him that he, if he wished to ask for a change of venue that he do that. Finally he did. And this went on over a period of months, not days or weeks for that matter. This went on for a long time . . . .
>
> Over the period of time that we're talking about I do not know of any reason that motions could not have been filed. There are various dates set aside during every year of the calendar for the disposition of criminal and civil matters. All of these matters could have been raised at any time way in advance of this. And I suppose quite candidly I insisted that this case go to trial. And I think that's my responsibility, simply because of the fact that it had been on the docket and it needed to be tried, and it did get tried . . . .
>
> I think I have discussed sufficiently the attempted continuance at the last minute. I think this should be viewed again in the context of what I said earlier. I personally directed the filing of motions, and had they been timely filed there would be a total record of all this. But these things were done–I don't recall any particular argument concerning the conflict of interest. There was some discussion about a severance, which I denied. But again, in the context of when all this took place, I think it's interesting that, you know, that has some bearing on this.

SR Vol. 10 at 797-98.

No. 10-60201

They appealed to the Mississippi Court of Appeals, arguing ineffective assistance of counsel based on (1) the joint representation, and (2) the denial of a seventh continuance.  The Mississippi Court of Appeals published an opinion affirming the conviction.  *Salts*, 984 So.2d 1050 (Miss. Ct. App. 2008).  Regarding the joint representation claims, it found that the Saltses had waived any objections to joint representation, and held in the alternative that under Mississippi law (and *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708 (1980)) the Saltses were required to show an actual conflict, rather than simply the possibility of a conflict.  *Salts*, 984 So.2d at 1061-62.

## 2.  Supreme Court Precedents

Three Supreme Court cases, none directly on point, furnish guideposts for the circumstances under which joint representation of codefendants may result in a conflict of counsel's duties that rises to a denial of counsel under the Sixth Amendment.

In *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173 (1978), the Court held that when counsel for multiple defendants informs the criminal trial court of the potential for the joint representation to create a conflict of interest, and timely objects to the multiple representation, seeking appointment of separate counsel, the trial court must investigate the risk of a conflict of interest. Otherwise, the verdict must be automatically reversed, because prejudice is presumed where counsel timely objects to the joint representation.  *Id*. at 484, 98 S. Ct. at 1179.  The Court noted "that the failure, in the face of the representations made by counsel weeks before trial and again before the jury was empaneled, deprived petitioners of the guarantee of 'assistance of counsel.'" *Id*.[4]  The Court held that reversal should be automatic, but limited its holding

---

[4] In *Holloway*, joint counsel had been appointed for defendants  on August 5, and counsel had moved on August 13 for the court to appoint separate counsel.  The court denied the motion without adequate inquiry, and the question before the Supreme Court was whether

No. 10-60201

to situations where the objection was (1) timely and (2) based on defense counsel's representation regarding a conflict. *Id.*

The Court noted the danger that crediting counsel's representation of a conflict could lead to abuses "for the purposes of delay or obstruction of the orderly conduct of a trial," but said that its fact-limited holding "does not impair the trial court's ability to deal with counsel who resort to such tactics" "[w]hen an untimely motion for separate counsel is made for dilatory purposes." Rather, "[i]n this case . . .[,] no prospect of dilatory practices was present[.]" *Id.* at 486-87, 98 S. Ct. at 1180. The dissent agreed, in discussing the requirement of timeliness, that "[o]rdinarily defense counsel has the obligation to raise objections to joint representation as early as possible before the commencement of the trial." *Id.* at 495, 98 S. Ct. at 1184 (Powell, J., dissenting).

In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708 (1980), the Court again addressed the possibility of conflict of interest arising from multiple representation of criminal defendants, but this time the defendant had raised no objection in the trial court. *Id.* at 337-38, 100 S. Ct. at 1712. The Court held that where counsel makes no objection, a court need not initiate an inquiry into the potential for a conflict of interest unless it "knows or reasonably should know that a particular conflict exists." *Id.* at 347, 100 S. Ct. at 1717. On appeal or collateral review, the defendant who failed to object at trial must demonstrate that an actual conflict of interest adversely affected his defense. The Court characterized *Holloway* as requiring "state trial courts to investigate timely objections to multiple representation." *Cuyler*, 446 U.S. at 346, 100 S. Ct. at 1717. But

> "[d]efense counsel have an ethical obligation to . . . advise the court promptly when a conflict of interest arises during the course of trial.

---

such denial warranted automatic reversal, or reversal only if the defendants could demonstrate prejudice.

No. 10-60201

> Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist."

*Id.* at 346-47, 100 S. Ct. at1717.

*Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237 (2001), is the third case concerning conflicts arising from joint representation. This time, the Court held that even where the trial court knew or reasonably should have known of a conflict arising from joint representation, but there was no objection to the representation, a defendant, to prevail,  must still demonstrate that counsel performed defectively as a result of the conflict. *Id.* at 173-74, 122 S. Ct. at 1245. The Court reiterated that "*Holloway* . . . creates an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection[.]" *Id.* at 168, 122 S. Ct. at1241-42.

### 3.  Legal Rules Applied

The Mississippi Court of Appeals held, as an alternative to its waiver finding, that "because the Saltses never showed an actual conflict of interest, there was no need for any inquiry by the trial court into the propriety of joint representation." *Salts*, 984 So.2d at 1063. The court addressed the two primary cases cited by the Saltses in their brief, *Smith v. State*, 666 So.2d 810 (Miss. 1995), and *Armstrong v. State*, 573 So.2d 1329 (Miss. 1990), both of which had reversed a verdict where there was an actual conflict of interest.[5]  It found these cases distinguishable on the ground that no actual conflict had been demonstrated here.

Instead, the court relied on its previous decision in *Witt v. State*, 781 So.2d 135 (Miss. Ct. App. 2000), which held that without reason to suppose that an

---

[5] Of note, both these cases cite *Holloway* solely for its dicta regarding the nature and dangers of conflicts.

actual conflict existed, the trial court was not required to inquire into the propriety of multiple representation. *Id*. at 138. The *Witt* court derived this holding almost word-for-word from *Cuyler*'s dictate that "unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Witt*, 781 So.2d at 138, quoting *Cuyler*, 446 U.S. at 347, 100 S. Ct. at 1717. The Mississippi Court of Appeals applied *Witt* to say that "a court needs to conduct an inquiry into the propriety of a joint representation only when an actual conflict has been shown."

The majority opinion faults the state court for failing to acknowledge *Holloway* or the fact that *Holloway* and *Cuyler* create different rules. It says that the state appeals court applied a rule directly contrary to *Holloway*'s requirement of investigation of timely objections. It concludes that the rule applied by the state court (a court need conduct an inquiry only when an actual conflict has been shown) directly conflicts with *Holloway*'s holding (where defendant's counsel timely objects and says there is a conflict, the court must initiate an inquiry), and that relief is thus warranted under § 2254(d)(1).

As I stated at the outset, I believe this reasoning and conclusion are seriously mistaken in three ways: the majority opinion evaluates the state court's reasoning rather than its decision; it ignores the lack of briefing on *Holloway* at the state court; and it assumes that *Holloway* compels relief despite considerable evidence that the motion in this case was untimely and that the trial court clearly found it to be untimely.

In the first place, the majority opinion relies entirely on the reasoning of the state court to invalidate the state court's conclusion, which as I will show is otherwise easily defensible. This is error under *Neal v. Puckett*, *supra*, a case decided by our court *en banc*.[6] *Neal*, in turn, derives from AEDPA, which

---

[6] To the extent that evaluating the reasoning of the state court is inevitable, the proposed opinion errs in its reading of the state court's opinion. The majority thus states:"The

No. 10-60201

authorizes federal courts to grant habeas relief only for state court "decisions," not "opinions," that contravene its terms, 28 U.S.C. § 2254(d); *see also Harrington, supra*, ___ U.S. ___, 131 S. Ct. at 784 (AEDPA refers only to a "decision" resulting from an adjudication of a petitioner's claim on the merits).

Second, the majority opinion faults the state court for "ignoring the existence of" *Holloway*'s "rule" of automatic reversal–a rule, by the way, that was never cited in either party's briefing at the Mississippi Court of Appeals. The briefs filed in the state court of appeals focused on *Cuyler* and state law. The Saltses' initial brief to the Court of Appeals did not cite *Holloway* for the purportedly relevant automatic-reversal rule; their reply brief cited *Holloway*'s discussion of the sufficiency of counsel's timely objection to demonstrate prejudice, but still did not cite *Holloway*'s holding.

Nevertheless, the majority opinion is premised on the square applicability of *Holloway* and the majority's view that the state court contradicted *Holloway* by requiring a party to show an actual conflict. Two mistakes inhere in this reasoning. The Supreme Court holds that even if a state court fails to mention controlling precedent (of the Supreme Court), the state's ultimate decision may still be supportable for AEDPA purposes. *See Early v. Packer*, *supra*. Additionally, the majority's parsing of *Holloway* begs the relevant question under AEDPA, which is whether fairminded jurists can disagree about whether *Holloway* applies here. *See Harrington v. Richter*, *supra*. The state court could reasonably have concluded that *Holloway* is inapposite because counsel's motion

_____

state appeals court[] wrongly held that a defendant must always show actual conflict, even where the trial court failed to investigate counsel's timely motion." This is simply not what the state court said; the state court did not actually say that its holding would apply even where the trial court failed to investigate a *timely* motion. The state court opinion is more fairly read as stating the rule (enunciated by *Cuyler*, which it quotes) that a showing of a particular conflict is required absent "special circumstances" (*Cuyler*'s words) such as a timely objection. If the state court assumed the objection was not timely, a perfectly reasonable and almost certainly correct assumption, then no special circumstances existed, and counsel should have demonstrated an actual conflict.

35

was untimely raised. So viewed, the state court's decision is perfectly consistent with *Holloway* as well as *Cuyler* and *Mickens*.

Thus, the most important error in the majority is its assumption that the motion for separate counsel was timely in the face of overwhelming circumstances to the contrary and a state court finding that deserves deference under § 2254(e)(1). The majority opinion finds timeliness because Waide objected "before trial began, before the jury was selected and sworn." It conclusorily asserts that the motion was not "made for dilatory purposes." It says that "the record here does not support a conclusion that Waide's motion was an untimely motion . . . made for dilatory purposes." These contentions are indefensible.

The Saltses were represented continuously by reputable, highly qualified counsel, yet they missed two years of opportunities to object to the joint representation. Further, they forewent two final pretrial motion deadlines (the August 5 and September 27 deadlines), for at least one of which Thorne had filed several motions.

The majority opinion relies heavily on the special circumstances faced by attorney Waide in this case: it concludes that his motion for separate counsel could not have been made for dilatory purposes because he had just begun representing the Saltses and had no previous opportunity to lodge this objection. It suggests this consideration is "[p]erhaps more important" than the timeliness of the motion. But this is not accurate. *Holloway* applies only to timely objections to joint representation; counsel's dilatory purpose is not an additional element that *Holloway* demands to establish untimeliness. But if this were the case, the record reasonably supports a conclusion that the motion was filed for dilatory purposes. Waide made this clear in the hearing, as he also argued a motion to continue trial and contended that he had insufficient time to prepare. Obviously, he felt his clients would benefit from an additional delay to the trial.

36

Moreover, since no previous counsel had pointed out this alleged conflict, the objective support for Waide's motion is doubtful.

In fact, the trial court's conclusion here, that the motion constituted another delay tactic, was reasonable for *precisely* the reasons contemplated by *Cuyler*, *Mickens*, and *Holloway*: "Defense counsel have an ethical obligation to . . . advise the court promptly when a conflict of interest arises during the course of a trial. [T]herefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Cuyler*, 446 U.S. at 346-47, 100 S. Ct. at 1717. Given that two motion deadlines and two years had passed, and the date for trial had come, the trial court had every right under *Cuyler* to assume that the representation entailed no conflict.

The majority opinion implies that when Waide took over, any motions which he concluded were advisable were timely, regardless of any deadlines faced by previous counsel. This is unrealistic as a matter of court management, and inconsistent with the record. The trial court, whose explanation after trial is not recounted by the majority opinion, places the untimeliness in full context. The trial court clearly found that the motion was not timely. This conclusion was not disputed by the Mississippi Court of Appeals and would easily justify a decision not to address *Holloway* in its opinion.

Perhaps the majority simply overlooked this post-trial colloquy. Instead of reflecting on the judge's extended explanation why the motion was not timely, the majority opinion exclusively cites the trial court's somewhat confusing answer to the initial motion on the morning of trial, in which the court said, "this is another of the last-minute tactics[.]" The majority conclude,

> Even if this oblique reference . . . constitutes a finding that Waide's motion was made for dilatory purposes, this conclusion rests on an unreasonable determination of the facts. The reason [the judge

37

No. 10-60201

believed the motion to have been a 'last-minute tactic' was that he believed he had already addressed the issue.

Thus, "to the extent the trial court declined to investigate Waide's objection because it was dilatory, its conclusion is not entitled to AEDPA deference because it rests on an unreasonable determination of facts." Of course, it is not clear at all that this was the judge's reason, in light of his post-trial explanation that the motion was obviously untimely and should have been filed, if at all, by Thorne prior to the previous deadlines. Additionally, the majority opinion skips the proper analysis. Untimeliness is a state-court finding of fact, which the Saltses must rebut under AEDPA by clear and convincing evidence. § 2254(e)(1). *See Valdez v. Cockrell*, 274 F.3d at 948 (presumption of correctness applies to state court findings, both explicit findings and findings which can be implied from explicit conclusions of law). This they did not do. The majority's conclusion that the state court's decision was "contrary" to *Holloway* depends crucially on the majority's own almost-undefended factual finding that the motion was timely, a finding that requires it to ignore not only the years of continuances and missed deadlines that preceded that motion, but also the trial court's extended explanation of the motion's untimeliness.

The bottom line is that to apply *Holloway*, the majority must conclude not only that Waide's motion on the day of trial was timely, but that the motion was *so clearly timely that no fairminded jurist could disagree. Harrington, supra.* Is it possible that no fairminded jurist could think a motion filed after more than two years and two motions deadlines was untimely? I think not. I think the record demonstrates that the Mississippi courts could reasonably have concluded that the Saltses, having failed to prove any actual conflict imposed on their trial counsel, or any disadvantage to their defense, were unable to satisfy *Cuyler* or *Mickens.* The state court's decision is consistent and not in conflict with the

38

No. 10-60201

holding of *Holloway* because the objection to joint representation was untimely. Habeas relief should be denied.